[COMMENT1] [COMMENT2] 

 

 

 

 

 

                                               COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-03-390-CR

 

 

NICHOLAS GEORGE KLEIN                                                    APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

            FROM
THE 362ND DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

OPINION ON
STATE=S

PETITION
FOR DISCRETIONARY REVIEW 

 

------------

After reviewing the State=s petition for discretionary review, we modify our opinion and
judgment in this appeal.  See Tex. R. App. P. 50.  We withdraw our February 2, 2006 opinion and
judgment and substitute the following. 


This case involves
allegations by a child of sexual assault by a parent, which allegations were
recanted over a period of time before, and during, the trial of the parent. 








Under a single indictment, a
jury convicted Appellant Nicholas George Klein of eight counts of aggravated
sexual assault of a child, his daughter.[1]  The jury assessed a punishment of ten years= confinement in the Institutional Division of the Texas Department of
Criminal Justice on Count I of the indictment and assessed a ten-year probated
sentence on each of the remaining seven counts. 
The trial court sentenced Klein accordingly in two judgments, one for
Count I and one for the remaining Counts II through VIII.  Klein brings six points on appeal,
challenging the legal and factual sufficiency of the evidence, as well as
certain evidentiary rulings of the trial court, and the stacking of the
currently-running probated sentences onto the sentence of confinement on the
first count.  Because we hold that the
evidence is legally insufficient to support the verdicts on Counts I, II, III,
IV, V, and VI, we reverse the judgments as to those counts and enter an
acquittal on each count.  Regarding
Counts VII and VIII, we hold that the trial court reversibly erred in admitting
the testimony of Dawn Todd and Officer Cory Cook.  We therefore reverse the judgment as to
Counts VII and VIII and remand those two counts to the trial court for a new
trial consistent with this opinion. 








I.  Sufficiency
of the Evidence

A.  Legal Sufficiency

In his first point, Klein
complains that the evidence is legally insufficient to support the
verdicts.  In reviewing the legal
sufficiency of the evidence to support a conviction, we view all the evidence
in the light most favorable to the verdict in order to determine whether any
rational trier of fact could have found the essential elements of the crime beyond
a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Hampton v. State,
165 S.W.3d 691, 693 (Tex. Crim. App. 2005).








This standard gives full play
to the responsibility of the trier of fact to resolve conflicts in the
testimony, to weigh the evidence, and to draw reasonable inferences from basic
facts to ultimate facts.  Jackson, 443 U.S. at 319,
99 S. Ct. at 2789.  The trier of fact is the sole judge of the
weight and credibility of the evidence.  See Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); Margraves v.
State, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000).  Thus, when performing a legal
sufficiency review, we may not re-evaluate the weight and credibility of the
evidence and substitute our judgment for that of the fact finder.  Dewberry v. State, 4 S.W.3d 735,
740 (Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131 (2000). We must resolve any inconsistencies in the evidence in favor of the
verdict.  Curry v. State, 30 S.W.3d 394,
406 (Tex. Crim. App. 2000).  The standard of review is the same for direct
and circumstantial evidence cases.  Burden v. State, 55 S.W.3d 608,
613 (Tex. Crim. App. 2001); Kutzner v. State, 994 S.W.2d 180, 184 (Tex.
Crim. App. 1999).

In his brief, Klein contends
that the only probative evidence came from the outcry witness because the other
evidence of his guiltCthe
testimony of CPS investigator Dawn Todd, Carrollton police officer Cory Cook,
and S.A., Miriam=s classmateCwas inadmissible hearsay admitted with no immediate limiting
instruction, even though defense counsel both objected and requested a limiting
instruction.  The Texas Court of Criminal
Appeals has recently addressed the interplay between the issues of
admissibility and sufficiency:

Sometimes a claim of trial court evidentiary
error and a claim of insufficient evidence overlap so much that it is hard to
separate them.  For example, suppose that
the identity of a bank robber is proven through the testimony of one and only
one witness at trial.  Suppose further
that this witness' testimony is rank hearsay: 
>Little
Nell told me that Simon was the bank robber.=   On appeal a defendant might raise a hearsay
claim and a claim of sufficiency of the evidence to prove identity.  He will have the right to have the hearsay
question considered on its merits only if he objected properly at trial;  he will have the right to have the question
of the sufficiency of evidence to prove identity considered on its merits whether
or not he objected.

 








But an appellate court must consider all evidence
actually admitted at trial in its sufficiency review and give it whatever
weight and probative value it could rationally convey to a jury.  Thus, even if the trial court erred in
admitting the witness' testimony of Little Nell's out‑of‑court
statement, the reviewing court must consider that improperly‑admitted
hearsay in assessing the sufficiency of the evidence to prove the bank robber's
identity.  As Professors Dix and Dawson
explain:  >[a]n
appellant ... is not entitled to have an appellate court first consider the
appellant's complaints concerning improper admitted evidence and, if it
resolves any of those in favor of the appellant, to then, second, consider the
sufficiency of the properly‑admitted evidence to support the conviction.=  There is much logic in that rule:

 

This
rule rests in large part upon what is perceived as the unfairness of barring
further prosecution where the State has not had a fair opportunity to prove
guilt.  A trial judge's commission of
trial error may lull the State into a false sense of security that may cause it
to limit its presentation of evidence. 
Erroneous admission of hearsay evidence, for example, may cause the
State to forego offering other evidence that would ultimately prove
admissible.  

 

In our example, had the judge excluded the
hearsay identification evidence, the State might have put on other evidence to
prove identity.  The remedy lies in a new
trial, not an acquittal for insufficient evidence, because >[t]he
risk of frustrating the State's legitimate interest in a full opportunity to
prove guilt, in any case, outweighs the defendant's interest in being subjected
to trial only once.=  

 

Both
litigants and reviewing courts should be careful to distinguish claims of
improperly admitted evidence (trial error) from legal insufficiency of all
admitted evidenceCeven
improperly admitted evidence.  This Court
has not always been sufficiently careful in that regard and therein lies the
problem in this case.








Moff v. State, 131 S.W.3d 485, 489-90 (Tex. Crim. App. 2004).  Consequently, in addressing
the legal sufficiency of the evidence, we must temporarily put aside Klein=s complaints of trial error and consider all admitted evidence in the
light most favorable to the verdicts.

Klein was indicted on four
counts of aggravated sexual assault by penetrating Miriam=s sexual organ with his finger and four counts of aggravated sexual
assault by causing Miriam=s sexual organ
to contact or penetrate his mouth.  See Tex. Penal Code Ann. ' 22.011(a)(2)(A),
(C) (Vernon Supp. 2005).  We join other courts of appeal in holding
that the tongue is part of the mouth for purposes of this statute.  See Jiminez v. State, 953 S.W.2d 293,
297 (Tex. App.CAustin 1997, pet. ref=d); Johnson v.
State, 882 S.W.2d 39, 41-42 (Tex. App.CHouston [1st
Dist.] 1994, pet. ref=d); Montoya v. State, 841 S.W.2d
419, 422 (Tex. App.CDallas 1992) (op. on reh=g), vacated on
other grounds, 906 S.W.2d 528 (Tex. Crim. App. 1995).  All of the offenses were
alleged to have occurred in Denton County. 
The four digital penetration offenses charged in Counts I, III, V, and
VII were alleged to have occurred on or about June 1, 2000, December 1, 2000,
May 1, 2001, and November 1, 2001 respectively. 
Similarly, the remaining four oral-genital contact/penetration offenses
charged in Counts II, IV, VI, and VIII were alleged to have occurred on or
about June 1, 2000, December 1, 2000, May 1, 2001, and November 1, 2001.

Miriam, who was eleven years
old at the time of trial, testified in part as follows:








Q.  Tell us about a time that you remember.

. . . . 

A.  I was in my bed, and he came in.

Q.  What happened when he came in?

A.  He did what I told the counselor.

Q.  You told her that he touched you with his
fingers on your vagina and put his tongue on your vagina.

 

A.  Yes.

Q.  Is that what happened?

. . . .

A.  Yes.

Q.  Did that happen one time or more than one
time?

A.  More than one time.

Q.  Did it happen -- you said that you lived in
Carrollton.  Did it happen any other
places besides your house in Carrollton?

 

A.  No.

Q.  How old were you when you first moved to
Carrollton?

A.  Eight or nine, I think.

Q.  Did you -- you said that you went to fourth
grade in Carrollton, all of fourth grade, right?

 

A.  Yes.








. . . . 

Q.  The time that you=ve
told us about and the other times that happened, you said those were all at
your house in Carrollton.  Is that right?

 

A.  Yes.

Q.  Did that happen at night or during the day?

A.  Night.

Valerie Batchelder, an
elementary school counselor at McCoy Elementary School in Carrollton, Texas,
testified that on January 11, 2002, Miriam asked to speak with her.  She testified that Miriam told her, A[t]hings aren=t so good at
home.@  Batchelder said that Miriam
told her that her mom and dad fought sometimes and that sometimes her dad hit
her too hard.  Batchelder testified that
Miriam said, A[s]ometimes
my dad messes with me.@  When Batchelder asked what Amesses with me@ meant,
Miriam said that he tickled her and sometimes touched her between her legs with
his fingers, and sometimes he used his tongue. 
Batchelder claimed that Miriam said she tried to wear zip-up pajamas.
The prosecutor asked if Abetween her
legs@ would be her female sexual organ and Batchelder replied, A[y]es.@  Batchelder admitted that although she assumed
that Miriam was referring to her sexual organ, Miriam never specifically said
so. 








When Batchelder asked the
child how often her father messed with her, the child said it happened most
nights.  Batchelder said that Miriam
stated that she had not told her mother. 
Although Miriam did not indicate a time period for the events that she
described to Batchelder, she did mention that they occurred while her mother
was at a dance class. 

Dawn Todd, a CPS
investigator, testified that Miriam Aindicated that [Klein] had touched her on her vagina with his fingers
and with his tongue.@  Miriam told her that it happened on Monday
nights when her mother was at dance class. 
The following exchange took place regarding the location on Miriam=s body of the alleged touching:

Q.     When she talked about being touched between
her legs, did you ever ask her to clarify and say what she meant by that?

 

A.     I did. 
She indicated her vagina.  And
then at one point she was talking about something, and she said -- she referred
to a body part as her butt.  And I asked
her to explain to me what her butt was, and she pointed to her genital
area.  And I said, okay, what is the --
we talked about where pee comes out or where poop comes out.  And where pee comes out she calls butt, and
where poop comes out she called her rear.

 

Q.     And the part where she said her dad touched
her, what did she call that?

 

A.     The butt.

 

Q.     Did she ever call it anything else?

 

A.     She called it vagina also.








. . .
. 

 

Q.     Did you ever talk to her about where
specifically he had put his finger?  Did
you talk about, like, inside versus outside?

 

A.     We did. 
I asked her, and she said it was between the -- I don=t
know if she said flap parts.  I don=t
know if she was saying flap or flat parts, but she indicated it was on her
vaginal area.  We talked about inside-outside,
and she, if I remember correctly, said it was inside but not all the way in or
made some reference to that.

 

Q.     So in between the flat or flap parts?

 

A.     Right.

Officer Cook, the
investigating officer, testified that the home where the alleged conduct took
place was in Denton County.[2]  He also testified that Miriam told him that
she had last been assaulted in November 2001. 
Based on the appropriate standard of review, we hold that the evidence
is legally sufficient to support Klein=s conviction for Counts VII and VIII, that is, one count of aggravated
sexual assault on or about November 1, 2001 in Denton County, Texas by
penetrating Miriam=s sexual
organ with his finger and another count of aggravated sexual assault on or
about November 1, 2001 in Denton County, Texas by causing Miriam=s sexual organ to contact or penetrate his mouth.  We overrule Klein=s first point in part.








Regarding the remaining six
counts, however, we hold that the evidence is legally insufficient to support
Klein=s convictions because the record is void of any specific evidence of
separate incidents constituting commission of additional offenses.  Various acts of sexual abuse committed over a
period of time do not comprise a single offense under Texas law.  Vernon v. State, 841 S.W.2d 407, 410
(Tex. Crim. App. 1992).  Persons who
commit multiple assaults against the same victim are liable for separate
prosecution and punishment for each instance of abuse.  Id. 
The State must allege and prove a specific, single transaction.  O=Neal v. State, 746 S.W.2d 769, 771
(Tex. Crim. App. 1998).  However, the
State is not bound to prove a specific date. 
Scroggan v. State, 799 S.W.2d 679, 680 (Tex. Crim. App. 1990); Wilson
v. State, 730 S.W.2d 438, 443 (Tex. App.CFort Worth 1987, pet. ref=d).  In this case, as to the
first six counts, the State did not meet its burden.








Other than the testimony of
Officer Cook that Miriam had told him that she had been last assaulted in
November of 2001, there was no testimony proving a specific occurrence of an
incident provided by any witness.  The
testimony indicated (1) the alleged abuse occurred from the fall of 2001
through January of 2002, and perhaps even before that when the family resided
in Louisiana, (2) that Miriam reported the alleged sexual abuse occurred more
than once, (3) that the sexual abuse had been going on for a long time, (4)
that the sexual abuse happened Amost nights@ while her
mother was in dance class, (5) that her mother attended dance class for six to
eight weeks when Miriam was a student at McCoy Elementary, and (6) that Miriam
transferred to McCoy Elementary in April or May of 2001.  However, these general assertions fail to
describe separate and distinct incidents legally sufficient to enable the jury
to properly find more than one distinct offense of each type.  See Vernon, 841 S.W.2d at 410 (holding
defendant's various acts of sexual misconduct committed against stepdaughter
over period of six years did not in fact comprise single offense under laws of
Texas).

Thus, applying the
appropriate standard of review, we hold that the evidence is legally
insufficient to support Klein=s convictions on Counts I, II, III, IV, V and VI.  We sustain Klein=s first point in part.  We
therefore reverse the judgments and render an acquittal on these counts.  Because we have acquitted Klein on the only
count for which he was confined, we do not reach his sixth point concerning the
issue of stacking.  See Tex. R. App. P. 47.1.  Having sustained Klein=s first point in part and overruled it in part, we will address Klein=s remaining points with regard to only the live counts, Counts VII and
VIII. 
See id.








B.  Factual Sufficiency of the Evidence

In his second point, Klein
complains that the evidence is factually insufficient to support the verdicts.
Again, Klein seeks to exclude from our review evidence that he alleges is
inadmissible.  In reviewing the factual
sufficiency of the evidence to support a conviction, we are to view all the
evidence in a neutral light, favoring neither party.  See Zuniga v. State, 144 S.W.3d 477,
481 (Tex. Crim. App. 2004). Relying on the Texas
Court of Criminal Appeals rationale in Moff, quoted above,[3]
as well as the holdings of our sister courts in Houston and Amarillo,[4]
we hold that Aall the
evidence@ means all admitted evidence, even evidence improperly admitted. 








The only question to be
answered in a factual sufficiency review is whether, considering the evidence
in a neutral light, the fact finder was rationally justified in finding guilt
beyond a reasonable doubt.  Zuniga, 144 S.W.3d at
484.  There are
two ways evidence may be factually insufficient:  (1) when the evidence supporting the verdict
or judgment, considered by itself, is too weak to support the finding of guilt
beyond a reasonable doubt; or (2) when there is evidence both supporting and
contradicting the verdict or judgment, weighing all of the evidence, the
contrary evidence is so strong that guilt cannot be proven beyond a reasonable
doubt.  Id. at 484-85.  AThis standard acknowledges that evidence of guilt can >preponderate= in favor of
conviction but still be insufficient to prove the elements of the crime beyond
a reasonable doubt.@  Id. at 485.  In other words, evidence supporting a guilty
finding can outweigh the contrary proof but still be insufficient to prove the
elements of an offense beyond a reasonable doubt.  Id.

In performing a factual
sufficiency review, we are to give deference to the fact finder=s determinations, including determinations involving the credibility
and demeanor of witnesses.  Id. at 481; Cain
v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  We may not substitute our
judgment for the fact finder=s.  Zuniga, 144 S.W.3d at 482.  A proper factual sufficiency
review requires an examination of all the evidence.  Id. at 484, 486-87.  An opinion addressing factual
sufficiency must include a discussion of the most important and relevant
evidence that supports the Klein=s complaint on appeal.  Sims v. State, 99 S.W.3d 600,
603 (Tex. Crim. App. 2003).

Klein focuses on Miriam=s testimony.  In relevant part,
she testified as follows while being questioned by the prosecutor:








Q.  We talked about what you told Mrs.
Batchelder, that your dad had touched you on your vagina  with his fingers and his tongue.  When did that first start happening?

 

[Defense
Counsel]: I=m
going to renew my objection, your Honor. 
She has not testified that it started happening.  All this child=s
testified to is what she told someone. 
There is no evidence that it happened. 

 

The defense objection was overruled.  The testimony then continued,

A.  I don=t
remember.

 

Q.  Do you have a pretty good memory?

 

A.  Yes.

 

Q.  And how old can you -- how old were you that
you have memory of?  How far back can you
remember?

 

A.  I can remember certain things but -- like
really far back, but only certain things I can remember.

 

Q.  So you don=t
remember exactly when it first started?

 

A.  No.

 

Q.  What=s the first time that you
remember?

 

A.  I don=t really know. 

 

. . . . 

 

Q.  Are there any times that you remember enough
to where you can describe them in court?

 

A.  Yes.

 

Q.  Tell us about a time that you remember.








[Defense
Counsel]:  Your Honor, I=m
going to object.  She hasn=t
asked her what it is that she does remember. 

 

THE COURT:  Overruled.

 

Q.  . . . That means you can
answer.

 

A.  I was in my bed, and he came in.

 

Q.  What happened when he came
in?

 

A.  He did what I told the counselor.

 

Q.  You told her that he touched you with his
fingers on your vagina and put his tongue on your vagina .

 

A.  Yes.

 

Q.  Is that what happened?  

 

A.  You mean then or at all?

 

Q.  Is that what happened the time that you=re
telling us about?

 

A.  Yes.

 

Q.  Did that happen one time or more than one
time?

 

A.  More than one time.

 

Q.  Did it happen -- you said that you lived in
Carrollton.  Did it happen any other
places besides your house in Carrollton?

 

A.  No.

 

Q.  How old were you when you first moved to
Carrollton?

 

A.  Eight or nine, I think.

 








Q.  Did you -- you said that you went to fourth
grade in Carrollton, all of fourth grade, right?

 

A.  Yes.

 

 . . . . 

 

Q.  The time that you=ve
told us about and the other times that happened, you said that those were all
at your house in Carrollton.  Is that
right?

 

A.  Yes.

 

Q.  Did that happen at night or during the day?

 

A.  At night.

 

Q.  Where was your mom when this
was happening?

 

A.  I don=t remember. 

 

. . . . 

 

Q.  Did you ever tell anyone that what you told
Mrs. Batchelder wasn=t
true?

 

A.  Yes.

 

Q.  And who was the first person that you told
that to?

 

A.  My mom.

 

Q.  How come you told your mom that?

 

A.  Because she--because it didn=t and
she is a person I can trust.        

Q.  Because it didn=t and
she=s a
person that you can trust?

 

A.  Yes.








Q.  Explain that to us.

 

A.  Like, I felt that I could tell her because I
made a mistake, and it=s
hard to tell somebody when you make a mistake.

 

Q.  What did you make a mistake
about?

 

A.  About saying something that
didn=t --
that wasn=t
true.

 

Q.  I=m
confused.  What did you say that wasn=t
true?

 

A.  I said that my dad touched
me, and it wasn=t
true.

 

Q.  But you just told us that it
happened.

 

A.  I thought you were referring
to what I said, so . . . .

 

Q.  So you told your mom that it
didn=t
happen.

 

A.  Yes.  

. . . .

Q.  . . . Now, you told Mrs. Bachelder and you
told Dawn Todd with CPS and you told the police that your dad came into your
room at night and that he touched you on your vagina  with his fingers and that he licked you on
your vagina   with his tongue.  Is that something that happened or something
that didn=t
happen?

 

A.  Didn=t happen.

Q.  So what you were talking about earlier when I
asked you to tell me about a time that you remember and you told us about the
time that he came in your room at night and you were wearing zip-up pajamas,
that was something that you remembered, was that true? 

 

A.  No.

Q.  You understand that you=re under oath to tell the truth?








A.  Yes.  I
thought that you were asking, like, if -- what I told somebody else.

Q.  So when the question was tell me about a time
you remember, you misunderstood that?

 

A.  Yes.

 

Q.  Do you remember what you told Dawn Todd when
you went to talk to her?  

 

A.  No.

 

Q.  Did you tell her that your dad had done these
things or that he had not done these things?

 

A.  Had.

 

Q.  Why did you tell Dawn Todd
that?

 

A.  Because I was afraid that if
I -- because I was afraid.

 

Q.  What where you afraid of?

 

A.  I was afraid if I changed my
story, I=d get
in trouble for lying.

 

Q.  Is lying something that you
get in trouble for?

 

A.  Sometimes. 

 

Miriam also testified that
she had been seeing therapists since she was in kindergarten for problems with
stealing and lying. 








Klein argues that Miriam
consistently recanted before trial and also recanted without equivocation at
trial when she understood the question. 
He also argues that the entire tenor of her testimony was that he did
not do anything to her and that the entire tenor of her testimony completely
refuted the allegations that Miriam made to Dawn Todd, Officer Cook, and
S.A.  

But it is not Klein=s, the State=s, or even
this court=s place to
interpret the evidence; it is the jury=s.  Zuniga, 144 S.W.3d at
481; Cain, 958 S.W.2d at 407.  Furthermore, the jury is under no requirement
to evaluate a witness=s testimony
as a unified whole; the jury may choose to believe all, part, or none of a
particular witness=s
testimony.  Losada v. State, 721 S.W.2d 305,
309 (Tex. Crim. App. 1986).  It is the jury, who has the opportunity to observe the demeanor of all
the participants at trial, who must exclusively judge the credibility of the
testimony.  Zuniga, 144 S.W.3d at
481; Cain, 958 S.W.2d at 407.  Based on our review of all the evidence, we
cannot say that the evidence supporting the verdicts on Counts VII and VIII,
considered alone, is too weak to support the finding of guilt beyond a
reasonable doubt, nor can we say that the evidence contradicting the verdict of
guilt on these two counts is so strong that guilt cannot be proven beyond a
reasonable doubt.  Zuniga, 144 S.W.3d at
484-85.  We
therefore overrule Klein=s second
point as to Counts VII and VIII.








II.  Trial Error

A.  Batchelder=s Testimony

In his third point, Klein
complains that the trial court erred by admitting the testimony of Valerie Batchelder,
the alleged outcry witness, because the State provided insufficient notice of
the evidence.  Specifically, Klein
complains that the written summary of the outcry statement fails to (1)
describe any act for which he was indicted and (2) adequately place him on
notice of the content and scope of the outcry testimony as required by the
statute.  See Tex. Code Crim. Proc. Ann. art. 38.072
(Vernon 2005). 
The State argues, in part, that Klein=s complaint that the outcry testimony fails to describe an act for
which Klein was indicted was not preserved because Klein failed to specifically
object on this basis after the hearing. 
We disagree.








At the conclusion of the
admissibility hearing, Klein=s trial counsel objected Athat the summary that was provided to [her] was insufficient and there
is -- this witness has indicated she=s going to testify to substantially more than the summary that was
provided.@  Klein=s trial counsel also lodged A[j]ust another objection on the insufficiency of the evidence -- of
the outcry notice.@  We see no meaningful distinction between the
objection Ainsufficiency
of the evidence@ and Afailure to describe@ an indicted offense.  Klein=s trial counsel=s objections
sufficiently put the trial judge on notice of the nature of Klein=s complaints.  

To the extent that the State
argues that Klein failed to preserve his complaint about the notice=s failure to describe an indicted offense because the objection was
not made before the jury, we note that, if a trial court hears objections to
proffered evidence outside the jury=s presence and rules that the evidence is admissible, the objections
are deemed to apply to the evidence when it is admitted before the jury without
the necessity of repeating the objections. 
Tex. R. Evid. 103(a)(1); Geuder v. State, 115
S.W.3d 11, 13-14 (Tex. Crim. App. 2003); Ethington v. State, 819 S.W.2d
854, 858 (Tex. Crim. App. 1991).  Consequently, we hold that
Klein preserved his complaint that the outcry statement was insufficient
because it failed to describe an act for which he was indicted.








Article 38.072 creates a
statutory exception to the general rule excluding hearsay evidence for a child
abuse victim=s initial
outcry statement made to the first person 18 years of age or older, other than
the defendant, to whom the child made a statement about the offense.  See Tex.
Code Crim. Proc. Ann. art. 38.072. 
Before the outcry statement is admissible, however, several requirements
must be satisfied.  First, the party
intending to offer the statement must notify the adverse party, on or before
the 14th day before the proceedings begin, (1) of its intention to do so, (2)
with the name of the witness through whom it intends to offer the statement,
and (3) with a written summary of the statement.  Id. ' 2(b)(1)(A), (B), (C).  Second,
the trial court must determine, in a hearing conducted outside the presence of
the jury, that the statement is reliable based on the time, content, and
circumstances of the statement.  Id.
' 2(b)(2).  Finally, the child
must testify or be available to testify at the proceeding in court or in any
other manner provided by law.  Id.
' 2(b)(3).  

We review the trial court's
decision to admit or exclude a hearsay statement that may fall within the
article 38.072 hearsay or outcry exception under an abuse of discretion
standard.  See Garcia v. State,
792 S.W.2d 88, 92 (Tex. Crim. App. 1990); Smith v. State, 131 S.W.3d
928, 931 (Tex. App.CEastland
2004, pet. ref=d).  As stated by the court of criminal appeals in
Garcia, Aa trial
court has broad discretion in determining the admissibility of such
evidence.  The exercise of that
discretion will not be disturbed unless a clear abuse of discretion is
established by the record.@  792 S.W.2d at 92.

For an outcry statement to be
admissible under article 38.072, the outcry statement must describe the offense
in some discernible manner and must be more than words which generally allude
that something in the area of sexual abuse is occurring.  See id. at 91. 








In Garcia, the
appellant argued that the trial court erred because the complainant=s first grade teacher should have been designated the outcry witness,
not the witness so designated, because she was the first person, eighteen years
old or older to whom the complainant made a Astatement about the offense.@  See id. at 89-90.  In evaluating Garcia=s complaint, the court of criminal appeals interpreted the phrase, Astatement about the offense,@ found in section 2(a)(2) of the statute, to mean Aa statement that in some discernible manner describes the alleged
offense,@ indicating that article 38.072 demands Amore than a general allusion of sexual abuse@ before a person may be properly designated an outcry witness.  See id. at 91.  In rejecting appellant=s argument that the teacher was the outcry witness, the court stated
that the record merely reflected that the complainant had Atold her teacher that something had happened at home, and that it had
to do with child abuse,@ and that,
as to a description of the alleged offense, the record was Avoid as to any specific details of the statements@ made to the teacher.  See id.

In the case before us, the
written outcry summary provided by the State to Klein was handwritten by the
outcry witness and stated:








[Miriam],
5th grader at McCoy, asked to speak with me. 
Said her parents fight at night and she feels scared.  Father is also mean to [her] -- >hits
me with his hand too hard= -- >it
hurts bad.=  >He also messes with me.= When
I asked what >messes=
means she said >he
comes in my bedroom at night and tickles me.=  >I don=t
like it.=  >He touches me between my
legs.  Sometimes he uses his tongue and I
don=t
like it.=  Said her mother doesn=t
know -- never told anyone.  Says mom is
always nice to her.  Use [sic] to lock
her door, but dad changed the locks. 
Tries to wear zip up pajamas.  Has
3 siblings 4 yrs. old & younger (2 sisters & 1 brother).

 

Further, Batchelder testified
at the admissibility hearing that Miriam told her, 

$                  
Athings aren=t so good at home@; 

$                  
that her parents fought
sometimes and that sometimes her father hits her too hard; 

$                  
that there used to be a lock
on her bedroom door but that her dad had removed it or it would not lock
anymore; 

$                  
Asometimes he
messes with me@; 

$                  
that her dad tickled her and
sometimes touched her between her legs with his fingers, and sometimes he used
his tongue; 

$                  
that her father Amess[ed] with her@ most nights; 

$                  
that the events occurred
while her mother was at a dance class; 

$                  
that she had not told her
mother; and 

$                  
that she tried to wear zip-up
pajamas; 








These statements are more
than general allusions that something in the area of sexual abuse is
occurring.  Unlike in Garcia,
where there was only a general reference to an unidentified something wrong
going on at home, here Miriam=s statements to Batchelder were sufficient to identify in a
discernable manner the type of sexual abuse, when the abuse usually occurred,
and what actions Miriam had taken to prevent the future abuse.  See Garcia, 792 S.W.2d at
91.  Thus, we hold that the trial court
did not abuse its discretion by allowing Batchelder to testify as the outcry
witness because the State provided sufficient notice of the evidence to
Klein.  See Tex. Code Crim. Proc. Ann. art. 38.072;
Garcia, 792 S.W.2d at 91.  








We now turn to Klein=s complaint that the trial court erred when it admitted Batchelder=s testimony because her testimony at trial included facts not
mentioned in the written summary. 
Specifically, Klein complains about the trial court=s admittance of testimony from Batchelder that Miriam, (1) always
begged her mother to allow her to stay and watch her mother=s dance lessons because when she did not her dad picked her up, took
her home, and Amesses with
me,@ (2) begged Batchelder to call her mother and tell her, and (3) told
Batchelder that Anow you know
why I love school so much.@  The State responds that it was
not error for the trial court to admit Batchelder=s testimony regarding the first two statements because the facts
contained in the statements were either included in the outcry summary or
merely described circumstances leading up to the outcry.  As to Batchelder=s testimony regarding the third statement, the State argues that Klein
failed to preserve his complaint for our review because (1) Batchelder did not
testify regarding this statement at the admissibility hearing, and (2) Klein
failed to lodge any objection when Batchelder testified to the statement at
trial.  Because the record reflects that
Batchelder testified at the admissibility hearing that Miriam told her, Anow you know why I like school so much,@ and because Klein, at the conclusion of the hearing, objected to the
outcry summary as being insufficient, we hold that Klein preserved his
complaint as to Batchelder=s testimony regarding the third statement for our review. 








The purpose of the notice
requirement contained in Article 38.072 is to prevent the defendant from being
surprised by the introduction of the outcry hearsay testimony.  Gay v. State, 981 S.W.2d 864, 866
(Tex. App.CHouston [1st
Dist.] 1998, pet. ref=d).  To achieve this purpose, the written summary
must give the defendant adequate notice of the content and scope of the outcry
testimony.  Id;  Davidson v. State, 80 S.W.3d 132, 136
(Tex. App.CTexarkana
2002, pet. ref=d).  It is sufficient if it reasonably informs the
defendant of the essential facts related in the outcry statement.  Davidson, 80 S.W.3d at 136.        After reviewing the record, we believe
that the outcry summary provided in this case contained the essential facts
necessary to provide Klein with notice of the content and scope of the outcry
testimony, i.e., we believe that the portion of the complained-of testimony not
specifically included in the outcry summary relates to non-essential
facts.  See Davidson, 80 S.W.3d at
135-37. Further, we cannot say that the trial court erred in admitting the
complained-of testimony because (1) the written outcry summary provided to
Klein by the State did include that Miriam told Batchelder that her father Amesses with me,@ and (2) we
believe that the trial court could have determined that the remaining portion
of the complained-of testimony merely describes the circumstances peripheral to
the alleged abuse and leading up to the outcry statement.  See Gottlich v. State, 822 S.W.2d 734, 737
(Tex. App.CFort Worth
1992, pet. ref=d) (holding
that it was not error for the trial court to admit a hearsay statement not
specifically included in the outcry summary where the statement described the
circumstances leading up to the outcry statement and its details), disapproved
on other grounds, Curry v. State, 861 S.W.2d 479, 482 n.2 (Tex. App.CFort Worth 1993, pet. ref=d).  Accordingly, we hold that
the trial court did not abuse its discretion when it admitted Batchelder=s outcry testimony.  We overrule
Klein=s third point. 

B.     Testimony of Todd, Cook, and S.A.  








In his fourth point, Klein
argues that the trial court erred in admitting the testimony of Dawn Todd, Cory
Cook, and S.A. regarding Miriam=s prior statements because it was inadmissible impeachment evidence of
Miriam.  He further argues that the trial
court erred by not giving a limiting instruction at the time the evidence was
admitted.  Initially, we note that Miriam=s testimony at trial was internally conflicting.  She testified that her father had sexually
assaulted her, but then testified she had only been repeating what she had
falsely told others and that he had not sexually assaulted her.  Thus, the testimony of Dawn Todd impeached
Miriam=s testimony recanting her outcry but supported her testimony affirming
the assaults.  The testimony of Officer
Cook regarding the statements Miriam made confirming Klein=s guilt was consistent with Miriam=s testimony affirming the assaults but impeached her testimony
recanting her outcry.  Finally, Cook=s testimony confirming that Miriam had recanted before trial was
consistent with Miriam=s testimony
recanting her outcry and her testimony that she had recanted before trial, but
it impeached her testimony that the offenses had actually occurred. 








At the time the State offered
the testimony of Todd, Cook, and S.A., Miriam had already testified.  The trial court therefore already knew that
Miriam=s testimony was self-conflicting. 
Because of that foreknowledge, the trial court also already knew that each
impeachment witness would both corroborate and impeach Miriam=s testimony in
some way.  Nonetheless, the trial court
refused to give an immediate limiting instruction, and, in the limiting
instruction present in the final jury charge,[5]
failed to clearly inform the jury that the evidence had been admitted by the
court for the purpose of impeachment, implying in the charge that the jury
determines the purpose for which the evidence is admitted.[6]

To the extent that the impeachment witnesses corroborated
Miriam=s testimony, the
State argues that the witnesses testified about admissible prior consistent
statements, and Klein argues that they testified about inadmissible prior
consistent statements. To the extent that the impeachment witnesses impeached
Miriam, Klein argues that the impeachment was impermissible because the only
way the evidence reached the jury was due to the fact that the State called
Miriam to the stand before calling the other witnesses, knowing that she had
recanted before trial and would likely recant while testifying.  We agree. 








Rule 607 allows a party to attack the credibility of its
own witness.  Tex. R. Evid. 607.  But
the Texas Court of Criminal Appeals limits such attacks:

[T]he State's knowledge that its own witness will testify
unfavorably is a factor the trial court must consider when determining whether
the evidence is admissible under Rule 403.... [A] trial court abuses its
discretion under Rule 403 when it allows the State to admit impeachment
evidence for the primary purpose of placing evidence before the jury that was
otherwise inadmissible.  [Such]
impeachment evidence must be excluded under Rule 403's balancing test because
the State profits from the witness' testimony only if the jury misuses the
evidence by considering it for its truth. 
Consequently, any probative value the impeachment testimony may have is
substantially outweighed by its prejudicial effect.

Hughes v. State, 4 S.W.3d 1, 5 (Tex. Crim. App. 1999).








It is clear from the record that the State had ample notice
that Miriam had recanted before trial and that she would recant on the
stand.  Before trial, Miriam sent two
letters to the prosecutor telling her that the events she described to Valerie
Batchelder did not occur.  At a bond
hearing on August 8, 2002, more than a year before trial, the prosecutor
cross-examined Jean Valentine, one of Miriam=s prior
therapists, regarding Miriam=s first
recantation of the sexual abuse allegations in a session.  The prosecutor also was aware that Officer
Cook, the police officer who investigated the case and who spoke with Miriam at
least twice at her school, said Miriam had recanted to him on January 30, 2002,
less than a month after her initial outcry. 
Finally, the prosecutor was also aware that since January 30, 2002,
Miriam had consistently denied the sexual abuse allegations.  Moreover, it is apparent from a review of
Miriam=s entire testimony
that she was recanting her allegations of abuse.  In that regard, we note that Miriam began her
testimony by recanting and ended with recanting.  Only the answers to a few questions from the
prosecutor, which questions Miriam later indicated she misunderstood, confirm
her initial outcry against Klein. 

It is also clear from the record that the testimony of Dawn
Todd was essential to the State=s case in
chief.  Todd=s testimony
allowed the State to prove penetration, an essential element of Count VII of
the indictment. Similarly, Cook=s testimony was
important because it was the only testimony identifying a specific date for an
occurrence of the alleged offenses. 
Because the value of the testimony of Todd and Cook came only from its
misuse by the jury, any legitimate probative value it had was substantially
outweighed by its prejudicial effect.  Id.  Consequently, the trial court erred to the
extent that it admitted the testimony of Cook and Todd as impeachment evidence.









The non-specific testimony of S.A., however, that Miriam
had told her that her dad Adid things to her
at night,@ does not tend to prove any of the
essential elements of the State=s case.  It does, however, tend to challenge Miriam=s credibility by
conflicting with Miriam=s testimony that she had told S.A. that
she was Ahaving a bit of
problems at home,@ because it, unlike Miriam=s testimony as to
what she told S.A., implies abuse.  We
cannot therefore conclude that the State=s primary purpose
in having S.A. testify was to get her evidence before the jury.  We hold that the trial court did not err in
admitting the testimony of S.A.  We do
not need to reach Klein=s subissue regarding the timeliness of the
limiting instruction.  See Tex. R. App. P. 47.1.  We sustain Klein=s fourth point as
to the testimony of Todd and Cook; we overrule it as to the testimony of S.A. 

Even though the testimony of Todd and Cook was admitted in
error to the extent that it was admitted as impeachment evidence, we must
uphold the trial court's rulings on admissibility if they are reasonably
supported by the record and are correct under any theory of law applicable to
the case.  See State v. Ross, 32
S.W.3d 853, 855-56 (Tex. Crim. App. 2000). 








In that regard, Klein=s fifth point
addresses another possible theory of admissibility.  In his fifth point, Klein contends that the
trial court erred to the extent that it admitted the testimony of Todd, Cook,
and S.A. as evidence of prior consistent statements by Miriam.  The State concedes that S.A.=s testimony is not
admissible as a prior consistent statement, but we have already held that the
trial court did not abuse its discretion by admitting it as impeachment
evidence.[7]  Thus, we address the admissibility of Dawn
Todd and Officer Cook=s testimony as evidence of prior
consistent statements. 

 Rule 801(e)(1)(B)
provides that a prior consistent statement by a witness Aoffered to rebut
an express or implied charge against the declarant of recent fabrication or
improper influence or motive@ is not
hearsay.  Tex. R. Evid. 801(e)(1)(B). 
The State argues that Miriam herself impliedly charged improper
influence when she indicated that she misunderstood the prosecutor after she
testified that her father had sexually assaulted her.  Our review of the record shows that it was
the prosecutor who introduced the issue of misunderstanding:

Q.  I=m confused.  What did
you say that wasn=t true?

 

A.  I said that my dad touched me, and it wasn=t true.

 

Q.  But you just told us that it happened.

 

A.  I thought you were referring to what I said,
so . . . .

 

Q.  So you told your mom that it didn=t happen.

 








A.  Yes.  

 

. . . .

 

Q. 
. . . .  Now, you told Mrs.
Bachelder and you told Dawn Todd with CPS and you told the police that your dad
came into your room at night and that he touched you on your vagina  with his fingers and that he licked you on
your vagina  with his tongue.  Is that something that happened or something
that didn=t happen?

 

A.  Didn=t happen.

 

Q. 
So what you were talking about earlier when I asked you to tell me about
a time that you remember and you told us about the time that he came in your
room at night and you were wearing zip-up pajamas, that was something that you
remembered, was that true? 

 

A.  No.

 

Q.  You understand that you=re under oath to tell the truth?

 

A. 
Yes.  I thought that you were
asking, like, if -- what I told somebody else.

 

Q. 
So when the question was tell me about a time that you remember, you misunderstood
that?

 

A.  Yes.

 








We see no caselaw, nor does the State direct us to any,
that would justify our stretching rule 801(e)(1)(B) to hold that Miriam=s disavowal of her
testimony supporting Klein=s guilt, taken
alone, operated as an implicit charge that she was Aimproperly
influenced.@ 
Similarly, nothing in defense counsel=s
cross-examination of Miriam implied that Miriam was lying when she testified
that Klein had assaulted her or that she had been pressured to so testify.
Defense counsel stayed completely away from the testimony that damaged Klein=s case and
emphasized Miriam=s testimony that was favorable to KleinCMiriam had lied
about the assault and had recanted consistently since soon after the
outcry.  All the jury had before it was
Miriam=s conflicting
testimony.  We hold that conflicting
evidence alone does not trigger rule 801(e)(1)(B). 

C.  Harm Analysis








Having found error, we must conduct a harm analysis to
determine whether the error calls for reversal of the judgment.  Tex.
R. App. P. 44.2. Because the error is not constitutional,[8]
we apply rule 44.2(b) and disregard the error if it does not affect Klein=s substantial
rights.  Tex. R. App. P. 44.2(b); see Mosley v. State, 983
S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh=g), cert.
denied, 526 U.S. 1070 (1999); Coggeshall v. State, 961 S.W.2d 639,
642-43 (Tex. App.CFort Worth 1998, pet. ref=d).  A substantial right is affected when the
error had a substantial and injurious effect or influence in determining the
jury=s verdict.  King v. State, 953 S.W.2d 266, 271
(Tex. Crim. App. 1997) (citing Kotteakos v. United States, 328 U.S. 750,
776, 66 S. Ct. 1239, 1253 (1946)); Coggeshall, 961 S.W.2d at 643. In
making this determination, we review the record as a whole.  See Johnson v. State, 967 S.W.2d 410,
417 (Tex. Crim. App. 1998). 

As the Texas Court of Criminal Appeals has held, properly
admitted evidence of an appellant=s guilt is one
factor to consider in performing a harm analysis under rule 44.2(b).  Motilla v. State, 78 S.W.3d 352, 358
(Tex. Crim. App. 2002).  Another is the
character of the error and its connection to the other evidence in the
case.  Id. at 359. 








Here, without the testimony of Dawn Todd, the State would
not have proven penetration, an essential element of Count VII of the
indictment.  Further, Officer Cook=s testimony was
significant because it was the only evidence identifying a specific date for an
occurrence of the alleged offenses. 
Finally, the testimony of Todd and Cook regarding Miriam=s prior out of
court statements was significant in its connection with other evidence, i.e.,
their testimony served to bolster the testimony of Batchelder while attacking
the credibility of Miriam=s recantation.  Based upon our review of all the evidence, as
discussed above, we conclude that the trial court=s errors,
separately and together, in admitting the evidence of Dawn Todd and Officer
Cook concerning Miriam=s statements had a significant or
injurious effect on the jury=s verdict such
that Klein=s substantial rights were affected.  See McMurrough v. State, 995 S.W.2d
944, 948 (Tex. App.CFort Worth 1999, no pet.).  Accordingly, the trial court=s error demands
that we sustain Klein=s fifth point.

III.  Conclusion

Because there is legally insufficient evidence of distinct
multiple acts of digital penetration and oral-genital contact, and because the
evidence of timing of the act of digital penetration and the act of
oral-genital contact supports  only
Counts VII and VIII, we reverse the judgments as to Counts I, II, III, IV, V,
and VI and enter an acquittal on those counts. 
Because the improperly admitted testimony of Dawn Todd and Officer Cook
about Miriam=s statements before trial affected Klein=s substantial
rights by adversely affecting the outcome of his trial, we reverse the judgment
as to Counts VII and VIII and remand those two counts for a new trial consistent
with this opinion.

 

 

BOB MCCOY

JUSTICE

PANEL A:  LIVINGSTON, DAUPHINOT, and MCCOY, JJ.

 

DAUPHINOT, J. filed a concurring
and dissenting opinion.

 

PUBLISH

 

DELIVERED: April 6, 2006

 

 

 











 
 
 
 
 
 
 




 

 

 

 

 

 

                                               COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-03-390-CR

 

 

NICHOLAS GEORGE KLEIN                                                    APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

            FROM
THE 362ND DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                   CONCURRING
AND DISSENTING OPINION

 

                                              ------------








I agree with the majority
that the evidence is legally insufficient to support the verdicts on Counts I,
II, III, IV, V, and VI and that we should reverse the judgments as to those
counts and enter an acquittal on each count. 
I also agree, regarding Counts VII and VIII, that the trial court
reversibly erred in admitting the testimony of CPS investigator Dawn Todd and
Officer Cory Cook and that we should reverse the judgment as to Counts VII and
VIII and remand only those two counts to the trial court for a new trial.  I disagree, however, that upon retrial of
those counts, the State should be forced to rely on an outcry witness whose
testimony, by the majority=s own assessment, is insufficient to show penetration.[1] 
Because the  majority=s opinion does not further the policy behind the outcry exception, I
must respectfully dissent.

Historically, a rape
conviction could not be had on the uncorroborated testimony of the adult female
complainant unless the complainant had made an outcry within a prescribed time
period after the rape.[2]  As the Reddick court pointed out in
1896,

Mr.
Phillips says: AIn
prosecutions for rape or for assault with intent to commit rape, proof of the
fact that the prosecutrix made complaint soon after the commission of the
alleged crime is admissible, and indeed is generally required; but the
particulars of the complaint made cannot be admitted in evidence as to the
truth of her statement.  The particulars
stated, as to the violence used or the person who committed the violence,
cannot be received.  The evidence should
be confined to the bare proof of the fact that the complaint of personal
violence was made, and that an individual was charged, without mentioning his
name[.]@[3]  

 








In 1990, the Texas Court of
Criminal Appeals addressed the policy and legislative intent behind article
38.07 of the Code of Criminal Procedure:

In 1975, House Bill 284 created the first version
of section 38.07 of the current Code of Criminal Procedure.  The ABill Analysis@
prepared for the House Committee on Criminal Jurisprudence, states that

 

It is felt that much of the problem associated
with the reporting and prosecution of rape is that the present statutes
discourage reporting and prosecution because of embarrassment to the victim and
the difficulty in obtaining a conviction.

 

This statement evidences the intent of the
Legislature to make rape convictions easier to obtain, not more difficult, a
fact this Court recognized in Hernandez. 
A hearing on House Bill 284, held at a joint session of the House
Committee on Criminal Jurisprudence and the Senate Committee on Jurisprudence
(February 18, 1975), also shows the intent of the bill=s
drafters to facilitate rape prosecutions. 
As originally drafted, the bill called for a sexual offense conviction
to be supportable on the uncorroborated testimony of the victim, with no outcry
requirement whatsoever.  However,
concerns were voiced at the hearing that the then newly proposed restrictions
on the admissibility of the victim=s past sexual history
together with the new definition of consent (allowing a woman to withdraw her
consent at any time before penetration) and the lack of any corroboration or
outcry requirement would go too far in eviscerating defendant=s
rights.  Presumably in response to these
concerns, the bill was amended so as to require corroboration or outcry from
victims of sexual offenses without the addition of a proviso exempting minor
victims of rape of a child from the new requirements.  Despite this omission, we can find no
evidence in the legislative history from 1975 of any intention to alter the
longstanding rule that the testimony of a minor victim who cannot consent to
sexual acts requires no corroboration or outcry in order to support a
conviction.

 








Indeed, Texas courts construing the pre‑1983
version of 38.07 declined to apply the statute to a prosecution in which
consent was not an issue.

 

However, in spite of this long line of precedent,
the legislature acted decisively to change the corroboration requirements for
minor victims of sexual assault in 1983. 
Senate Bill 838 was passed by the sixty‑eighth legislature almost
simultaneously with this court=s Hernandez decision,
and the two branches of government apparently came to different resolutions of
the same problem.  The legislative
amendment to 38.07 clearly expresses the legislature=s
intent to shield sexual assault victims under 14 from the normal outcry or
corroboration requirements, but to require stricter proof when the sexual
assault victim is 14 or older.  The
language added to Art. 38.07 in 1983 reads:

 

The requirement that the victim inform another
person of an alleged offense does not apply if the victim was younger than 14
years of age at the time of the alleged offense.[4]


 

Today, article 38.07 of the
Texas Code of Criminal Procedure provides, 

(a) A
conviction under  Chapter 21, Section
22.011, or Section 22.021, Penal Code, is supportable on the uncorroborated
testimony of the victim of the sexual offense if the victim informed any
person, other than the defendant, of the alleged offense within one year after
the date on which the offense is alleged to have occurred.

 

(b)
The requirement that the victim inform another person of an alleged offense
does not apply if at the time of the alleged offense the victim was a person:

 

(1) 17 years of age or younger;








 

(2) 65 years of age or older; or

 

(3)
18 years of age or older who by reason of age or physical or mental disease,
defect, or injury was substantially unable to satisfy the person=s
need for food, shelter, medical care, or protection from harm.[5]

 

Although the
outcry/corroboration requirement remains for adults under the age of 65 who
make a sexual assault complaint, the law is now gender neutral and follows the
longtime Texas rule relieving those younger than eighteen years of age of the
outcry/corroboration requirement.[6]

If minor complainants do make
an outcry, however, article 38.072 makes the child=s outcry statement admissible as substantive evidence of the offense.[7]  The
Court of Criminal Appeals has explained,

Under
Art. 38.072, by both the terms of the statute and by the legislative history,
outcry testimony admitted in compliance with Art. 38.072 is admitted as an
exception to the hearsay rule, meaning it is considered substantive evidence,
admissible for the truth of the matter asserted in the testimony.[8] 

 








In promoting its policy of
making conviction easier, the legislature limited those statements that
constitute a 38.072 outcry to those statements that  describe the offense charged.[9]  For
an outcry statement to be admissible under article 38.072, the Texas Court of
Criminal Appeals has held that the statement must describe the offense in some
discernible manner and must be more than words which generally allude that
something in the area of sexual abuse is occurring.[10]

In his third point, Appellant
complains that the trial court erred by admitting the testimony of Valerie
Batchelder, the alleged outcry witness, because the State provided insufficient
notice of the evidence.  Specifically, in
relevant part, Appellant complains that the written summary of the outcry
statement fails to describe any act for which Appellant was indicted.[11]   As
the Garcia court explained after announcing this rule,








We
believe that the statement must be more than words which give a general
allusion that something in the area of child abuse was going on.  In picking the particular wording of the Afirst
person@
requirement, the legislature was obviously striking a balance between the
general prohibition against hearsay and the specific societal desire to curb
the sexual abuse of children.  That
balance is the focal point of our analysis. 
The portion of the statute catering to the hearsay prohibition demands
that only the Afirst
person@ is
allowed to testify.  But the societal
interest in curbing child abuse would hardly be served if all that Afirst
person@ had
to testify to was a general allegation from the child that something in the
area of child abuse was going on at home. 
Thus we decline to read the statute as meaning that any statement that
arguably relates to what later evolves into an allegation of child abuse
against a particular person will satisfy the requisites of Sec. 2(a)(2).  The statute demands more than a general allusion
of sexual abuse.

 

. . . . 

 

. . . .  In
order to be designated as the outcry witness by the trial court, one element
that must be clearly shown by the evidence is that the victim described the
offense to that witness.[12]

 








In Molina v. State,[13] a case similar to the one before us, Molina
was charged with aggravated sexual assault by penetration.  The complainant=s mother entered their apartment and saw her husband=s reflection in a mirror as he was tying the drawstrings of his shorts
and threatening the complainant. 
Suspicious, the mother invited friends over so she could question her
daughter regarding what had happened. 
She was the first adult to whom the complainant spoke about the
incident, she spoke to the complainant on the day of the incident, she asked
her daughter if the appellant had pulled his pants and underwear down, and the
complainant answered Ayes@ to both questions.[14]  Nevertheless, the appellate court held that
the complainant=s mother was
not an outcry witness because Athe complainant=s mother did
not ask the complainant whether penetration occurred and . . . the complainant
did not tell her mother sexual penetration occurred.@[15]

In the case before us,
Batchelder testified that the complainant told her, 

$                  
Athings aren=t so good at home@;  

$                  
that her parents fought
sometimes and that sometimes Appellant hit her too hard;

$                  
Asometimes my
dad messes with me@;

$                  
that Appellant tickled her
and sometimes touched her between her legs with his fingers, and sometimes he
used his tongue;

$                  
that she tried to wear zip-up
pajamas;

$                  
that her father Amess[ed] with her@ most nights;

$                  
that she had not told her
mother; and

$                  
that the events occurred
while her mother was at a dance class.  








The complainant was not asked
whether penetration of her sexual organ occurred, nor did she volunteer that it
did.  Standing alone, her statements do
not describe either the alleged offense of aggravated sexual assault by digital
penetration or the alleged offense of aggravated sexual assault by oral-genital
contact/penetration in a discernible manner. 
Consequently, these statements are not more than general allusions that
something in the area of sexual abuse occurred.[16] 
Further, to the extent that the statements describe an unindicted
offense, such as simple assault, this court has already held that article
38.072 does not extend Ato an outcry
of a child respecting a collateral matter or an extraneous offense.@[17]  

While it is not necessary
that the outcry describe the offense with the specificity required by an
indictment, it must describe the offense. 
An outcry that Asomething
happened@ is not an outcry as contemplated by article 38.072.  Consequently, I would hold that the trial
court erred in admitting Batchelder=s testimony under article 38.072, sustain Appellant=s third point, and not address the remainder of this point.[18] 













In his fourth point,
Appellant argues in relevant part that the trial court erred in admitting the
testimony of Dawn Todd regarding the complainant=s prior statements because it was inadmissible impeachment evidence of
the complainant.  I agree with the
majority=s holding that
Todd=s testimony was
admitted in error to the extent that it was admitted as impeachment evidence,
but I disagree with the inescapable conclusion from the majority=s opinion that
Todd=s testimony could
not be admissible evidence for all purposes on retrial.  Under
the outcry exception, only one adult witness can receive an outcry of a single
offense.[19]  In this case, Todd is that witness for both
live counts.  Todd testified that the complainant Aindicated that [Appellant] . . . had touched her on her vagina [sic[20]] with his fingers and with his tongue.@  The complainant told her that
it happened many times during her mother=s Monday night dance class. 
Todd also testified that the complainant had indicated that the abuse
had been going on for quite some time and that it had also occurred when the
family had lived in Louisiana before moving to Texas.  The following exchange took place regarding
the location on the complainant=s body of the alleged touching:

Q.     When she talked about being touched between
her legs, did you ever ask her to clarify and say what she meant by that?

 

A.     I did. 
She indicated her vagina.  And
then at one point she was talking about something, and she said C she
referred to a body part as her butt.  And
I asked her to explain to me what her butt was, and she pointed to her genital
area.  And I said, okay, what is the C we
talked about where pee comes out or where poop comes out.  And where pee comes out she calls butt, and
where poop comes out she called her rear.

 

Q.     And the part where she said her dad touched
her, what did she call that?

 

A.     The butt.

 

Q.     Did she ever call it anything else?

 

A.     She called it vagina also.

 

. . .
. 

 

Q.     Did you ever talk to her about where
specifically he had put his finger?  Did
you talk about, like, inside versus outside?

 

A.     We did. 
I asked her, and she said it was between the C I
don=t
know if she said flap parts.  I don=t
know if she was saying flap or flat parts, but she indicated it was on her
vaginal area.  We talked about
inside-outside, and she, if I remember correctly, said it was inside but not
all the way in or made some reference to that.

 

Q.     So in between the flat or flap parts?

 

A.     Right.








As the first adult to whom
the complainant made a discernible outcry about the live counts, Todd could
have testified in the trial about the complainant=s outcry without limitation under article 38.072 if the other
requirements of that statute had been met.[21]  They were not.  There is no indication in the record that the
State provided the required notice or summary or that the trial court
determined that the outcry to Todd is reliable.[22]  But I
see no reason to bar the State from complying with the statute and introducing
Todd=s testimony on retrial if the trial court determines that the outcry
to Todd is reliable.[23]  This possibility upholds the policy behind
the enactment of article 38.072 in the first placeCcurbing the sexual abuse of children in this State.[24] 

Consequently, while I concur
in the outcome of the appeal, I must respectfully dissent from the majority=s holding that Batchelder is the proper outcry witness in this case.

 

LEE ANN DAUPHINOT

JUSTICE








PUBLISH

 

DELIVERED:
April 6, 2006











[1]As the complainant in this case is
a minor child, we will refer to her throughout the opinion as Miriam, although
that is not her real name. 





[2]We judicially notice the fact that
the City of Carrollton lies in three countiesCCollin, Dallas, and Denton.





[3]Moff, 131 S.W.3d at 489-90.





[4]Morales v. State, 95 S.W.3d 561, 563 (Tex. App.CHouston [1st Dist.] 2002, pet. ref=d); Barnum
v. State, 7 S.W.3d 782, 789 (Tex. App.CAmarillo
1999, pet. ref=d).





[5]In the final jury charge, the trial
court instructed the jury 

 

. . . that testimony of the witnesses Dawn Todd and/or Corey Cook
and/or Sarah Klein regarding statements of the witness [Miriam] was admitted
for the purpose of impeaching [Miriam], if you find that it does impeach her,
and you cannot consider impeachment testimony as any evidence of the guilt of
the defendant.  [emphasis supplied] 





[6]See Tex. R.
Evid. 104(a)
(indicating that preliminary questions concerning the admissibility of evidence
shall be determined by the court).





[7]The record reflects, however, that
Klein did not request a limiting instruction at the time of S.A.=s testimony, i.e., Klein did not
request the trial court instruct the jury that S.A.=s testimony was being admitted for
the limited purpose of impeachment and could not be considered for any other
purpose. [4RR 225]  Consequently, S.A.=s testimony was before the jury for
all purposes.  See Hammock v. State,
46 S.W.3d 889, 895 (Tex. Crim. App. 2001).

 





[8]See Johnson v. State, 967 S.W.2d 410, 417 (Tex. Crim.
App. 1998).





[1]See majority op. at 31, 36.





[2]Reddick v. State, 35 Tex. Crim. 463, 34 S.W. 274,
275-76 (1896).





[3]Id. at 274 (citations omitted).





[4]Scoggan v. State, 799 S.W.2d 679, 682-83 (Tex.
Crim. App. 1990) (citations omitted).





[5]Tex. Code
Crim. Proc. Ann. art.
38.07 (Vernon 2005).





[6]See Scoggan, 799 S.W.2d at
681 (citing Hindman v. State, 152 Tex. Crim. 75, 211 S.W.2d 182 (1948)
for the typical analysis). 





[7]Tex. Code
Crim. Proc. Ann. art.
38.072 (Vernon 2005).





[8]Rodriguez v. State, 819 S.W.2d 871, 873 (Tex. Crim.
App. 1991).





[9]Tex. Code
Crim. Proc. Ann. art.
38.072, ' 2(a).





[10]Garcia v. State, 792 S.W.2d 88, 91 (Tex. Crim.
App. 1990).





[11]See Tex.
Code Crim. Proc. Ann. art. 38.072, '2(a).





[12]Garcia, 792 S.W.2d at 91.





[13]971 S.W.2d 676 (Tex. App.CHouston [14th Dist.] 1998, pet. ref=d).





[14]Id. at 682-83.





[15]Id. at 683.





[16]See id.





[17]Beckley
v. State, 827 S.W.2d 74, 78-79 (Tex. App.CFort
Worth 1992, no pet.) (op. on reh=g).





[18]See Tex. R.
App. P. 47.1.





[19]Tex. Code
Crim. Proc. Ann. art.
38.072, '2(a)(2).





[20]See Tyler v. State, 950 S.W.2d 787, 789 (Tex. App.CFort Worth 1997, no pet.) (AWe would point out . . . that the
vagina is an internal organ.  It is a
canal that leads from the uterus of a female mammal to the external orifice of
the genital canal.@).





[21]See Tex. Code
Crim. Proc. Ann. art.
38.072, '2(b).





[22]See id.





[23]See id.





[24]Garcia, 792 S.W.2d at 91.















 [COMMENT1]MAJORITY BY
JUSTICE MCCOY, CONCURRENCE AND DISSENT BY JUSTICE DAUPHINOT.









 [COMMENT2]MAJORITY BY
JUSTICE MCCOY CONCURRENCE AND DISSENT BY JUSTICE DAUPHINOT