In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-01-00079-CR


______________________________




GLEN DAVIDSON, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 5th Judicial District Court


Bowie County, Texas


Trial Court No. 00-F-388-5




 




Before Cornelius, C.J., Grant and Ross, JJ.


Opinion by Justice Grant



O P I N I O N



 Glen Davidson appeals his conviction for indecency with a child. A jury found Davidson
guilty and assessed punishment at twenty years' confinement and a $10,000 fine. 

 Davidson contends the trial court erred in admitting certain "outcry witness" testimony
because the State failed to prove the mother was the proper outcry witness, because the State failed
to provide a summary as required by Tex. Code Crim. Proc. Ann. art. 38.072 (Vernon Supp. 2002)
or, alternatively, provided an insufficient summary as the testimony was beyond the scope of the
summary provided, and because the outcry statement was not reliable. 

 Davidson and his wife were friends of Kimberly Walraven, the mother of the alleged victim,
A.W., and they babysat Walraven's three children and provided her transportation. After confronting
Davidson about smoking marihuana in front of her children, Walraven asked A.W., who was six
years old at the time, if she was keeping any secrets with Davidson. A.W. told her mother about
things Davidson had done to her while he was babysitting. Walraven took A.W. to Child Protective
Services (CPS) and to a medical examiner. After A.W. had been interviewed by CPS personnel and
the police, approximately eleven months after she had first talked to her mother, she put in writing,
at her mother's request, some of the things that had happened. This short letter was given to the
defense. 

 During Walraven's testimony, Davidson objected at trial to the use of Walraven as an outcry
witness on the ground that the State did not provide a written summary of the outcry statement. The
court held a hearing outside the presence of the jury, found A.W.'s letter to be reliable and sufficient
as a summary of the outcry statement, and overruled Davidson's objection. No questions had been
asked about the content or circumstances of the outcry statement.

 Back in the presence of the jury, the prosecution continued questioning Walraven. Before
the hearing, Walraven had testified that when she had confronted Davidson about smoking
marihuana in front of her children, telling him that he could not expect them to lie, he had looked
directly at A.W. and said "even the Bible says . . . there's not always a good time to tell the truth." 
Immediately after the hearing outside the presence of the jury, the prosecution elicited the following
testimony: After Walraven asked Davidson to leave her apartment, A.W. was sitting on the floor
and would not look at her mother. Walraven asked her to come over to her and said, "[A.W.], you
know, truth is the best thing all the time," and she asked, "[H]as anything strange, or anything you
wouldn't want to tell mama, or is there anything that Davidson has told you that you shouldn't tell
mama?" and A.W. looked "scared to death" and said "no" in a shaky voice. Walraven said, "[T]here
is, isn't there?" A.W. began to cry, and Walraven took her into the bedroom and told her she would
love her no matter what. Then they prayed, so A.W. would not be afraid to tell her mother. When
the prosecutor asked, "What specifically did she tell you at that time[,]" Walraven answered that
A.W. had told her Davidson had touched her private part, had made her touch his, and had oral sex
with her. 

 After Walraven answered, Davidson objected that the outcry statement was not spontaneous,
that it was elicited by coercion from the mother, and that the testimony was not contained in the
summary. The judge overruled the objection.

 Walraven continued to repeat, in more detail and without further objection, what A.W. had
told her. She said Davidson made A.W. look at "dirty" magazines. She testified "I would say that
he [Davidson] had had oral sex with her, and I asked her if he made her have oral sex with him, and
she said, no." Walraven testified A.W. had seen "gooey stuff" come out of Davidson's penis "a
bunch of times." She said Davidson would wake A.W. "all the time." Walraven said that A.W. was
crying and that during the conversation, there were silent times where she would just hold A.W.
because A.W. was shaking like she had done something wrong, and she was "scared to death" and
felt embarrassed. Davidson cross-examined Walraven. 

 The prosecutor then called A.W. to testify. He asked several questions to determine whether
A.W. could tell the difference between the truth and a lie, and she promised to tell the truth. A.W.
testified Davidson had shown her pictures of people without their clothes on from magazines. She
testified Davidson would ask her to take her clothes off, would take his clothes off, would bring a
mattress into the living room, would ask her to lie on the mattress, would get on the mattress with
her, and would touch her privates. A.W. testified that one night when the three children were
spending the night at the Davidsons' home and his wife was at work, after A.W.'s brother and sister
had gone to sleep, Davidson got on top of her on the mattress and moved up and down on top of her
with his privates touching her. She testified there were times when she would see his privates and
saw stuff come out of his private. She testified about Davidson touching her privates with his finger
and it hurting her. She testified that Davidson told her to keep it a secret from her mother. She
testified that she remembered telling her mother what had happened and writing it in her own words. 
Davidson cross-examined A.W. 

 Hearsay is not admissible except as provided by statute or by the rules of evidence. See Long
v. State, 800 S.W.2d 545, 547 (Tex. Crim. App. 1990). Article 38.072 of the Texas Code of
Criminal Procedure creates an exception to the hearsay rule for statements of child abuse victims if
all the requisite conditions are met. Dorado v. State, 843 S.W.2d 37, 38 (Tex. Crim. App. 1992). 
Article 38.072 provides that in sexual offense cases committed against a child twelve years of age
or younger, statements that were made by the alleged child victim to the first person, eighteen years
of age or older, other than the defendant, about the offense will not be inadmissible because of the
hearsay rule. Tex. Code Crim. Proc. Ann. art. 38.072. In order for this hearsay exception to apply
to such a statement, on or before the fourteenth day before the proceedings begin, the party intending
to offer the statement must notify the adverse party of its intention to do so, and provide the adverse
party with the name of the witness through whom it intends to offer the statement and a written
summary of the statement. Id. Also, the trial court must find, in a hearing conducted outside the
presence of the jury, that the statement is reliable based on the time, content, and circumstances of
the statement. Id. Additionally, the child must testify or be available to testify at the proceeding in
court or in any other manner provided by law. Id. The trial court has broad discretion to determine
whether the child complainant's statement falls within the hearsay exception. The exercise of that
discretion will not be disturbed unless the record shows a clear abuse of discretion. See Reed v.
State, 974 S.W.2d 838, 841 (Tex. App.-San Antonio 1998, pet. ref'd).

 Davidson contends the State failed to prove that the victim's mother was the proper outcry
witness. However, Davidson did not raise this issue at trial, and it is therefore not preserved for
review. This issue is overruled. 

 Davidson contends the State failed to provide a written summary of the expected testimony
of the outcry witness. He argues that the handwritten note prepared by A.W. cannot constitute the
required summary. He also argues that because A.W.'s note was written eleven months after the
initial outcry statement was made and after interviews with the CPS personnel and the police, there
is no indicia of reliability regarding the letter's description of the outcry statement's content. 
Alternatively, Davidson contends that the summary provided by the State was insufficient to apprise
Davidson of the content and scope of the hearsay statements to which the outcry witness testified,
and therefore the court erred in admitting the witness's testimony that was beyond the scope of the
notice provided, as it did not meet the requirements for the hearsay exception. 

 The statute does not mandate who must prepare the summary or how it should be prepared. 
The statute only requires that it be a written summary of the statements made by the alleged child
victim about the offense which the state intends to introduce through another witness. Therefore,
it is the content of the writing, not who wrote it or whether it is typed or printed, that will determine
whether the writing is a summary of the statement, as required by the statute. Also, there is no
requirement that the court determine the reliability of the summary. The court must determine if the
state provided the defendant with a summary of the statements made by the alleged victim about the
offense, which the State intended to introduce, and determine whether the outcry statement itself is
reliable. 

 The purpose of the notice requirement is to prevent the defendant from being surprised by
the introduction of the outcry hearsay testimony. Gay v. State, 981 S.W.2d 864, 866 (Tex.
App.-Houston [1st Dist.] 1998, pet. ref'd). The written summary must give the defendant adequate
notice of the content and scope of the outcry testimony. Id. While there is no authority requiring 
a detailed summary, the summary of the outcry statement must be more than a general allusion to
sexual abuse. Thomas v. State, 1 S.W.3d 138, 140 (Tex. App.-Texarkana 1999, pet. ref'd). It must
describe the alleged offense in some discernible manner. Garcia v. State, 792 S.W.2d 88, 91 (Tex.
Crim. App. 1990). It is sufficient if it reasonably informs the defendant of the essential facts related
in the outcry statement. See Gottlich v. State, 822 S.W.2d 734 (Tex. App.-Fort Worth 1992, pet.
ref'd), overruled on other grounds, Curry v. State, 861 S.W.2d 479, 483 n.2 (Tex. App.-Fort Worth
1993, pet. ref'd); Norris v. State, 788 S.W.2d 65 (Tex. App.-Dallas 1990, pet. ref'd). 
 In Biggs v. State, the appellate court found that the summary provided to the defendant was
deficient because it provided little more information than was contained in the indictment and did
not summarize the detailed information that the victim had related to her mother about the "games"
she played with the defendant. 921 S.W.2d 282, 285 (Tex. App.-Houston [1st Dist.] 1995, pet.
ref'd). The summary in that case read: "On June 29, 1991 the Defendant had sexual contact with
[J.C.] and also exposed his genitals to her while she was at the Defendant's home visiting the
Defendant's daughter." Id. 

 In Gay, the court found that the defendant did not receive a sufficient written summary of the
outcry statement the state intended to offer because it only stated that the defendant had "kissed and
touched" the complainant. It did not state that the defendant had "bothered" her, made her touch
him, or threatened her. 981 S.W.2d at 866. 

 The note the State provided to Davidson for the summary requirement reads as follows:

 I fellt bad and glen timted me to do all the stuff that we do glen sayed that it is all ok.
He trid to kiss me. I do not like glen. glen is stupped.


 At first he sayed it is all all rite. Then we done it. But I did not lik it. I thaut it was
deskusting. He dug his finger up my tete hole. He said that he alwas wanted a girl
like me. than he said he done it to his doders, he shoed me some pitchers of his
doders. he even said kay was to fat to even see her tete. I said no she is not he
argued over it. than you made me tell you all about it and I cryed than you and glen
fot about it. finesh. 


 A.W.'s note does describe some instances of sexual abuse and says that A.W. told her mother
"all about it," suggesting that the instances mentioned in the letter were within the content of the
outcry statement A.W. made to her mother. Even so, there were only two phrases describing the
alleged abuse. The first, "Then we done it," was no more than a general allusion to sexual abuse.
Within context, "Then we done it" could refer to the earlier statement, "He trid to kiss me," or to the
later statement, "He dug his finger up my tete hole," to the act of intercourse, which is commonly
referred to by such wording, or to another undescribed event. The second, "He dug his finger up my
tete hole," was insufficient to put the defendant on notice as to the content and scope of the outcry
statement or the testimony the State intended to introduce regarding the outcry statement, which at
the time Davidson objected included that Davidson had touched A.W.'s private part, made her touch
his, and had had oral sex, all of which are essential facts that were relayed in the outcry statement. 
Therefore, the court erred in admitting the hearsay testimony over Davidson's objection, because the
summary provided insufficient notice for admitting such testimony under the hearsay exception
created by the statute. 

 When a nonconstitutional error is made during the course of a trial, it will be disregarded as
harmless error if the error did not affect the substantial rights of the appellant. King v. State, 953
S.W.2d 266, 271 (Tex. Crim. App. 1997). An appellant's substantial rights are implicated "when the
error had a substantial and injurious effect or influence in determining the jury's verdict." Id.

 We consider these factors in assessing the harmfulness of the error: the source of the error,
its nature, the extent the error was emphasized, potential collateral implications, the weight a juror
would place on the error, and the possible repetition of the error by the state if declared harmless. 
Harris v. State, 790 S.W.2d 568, 587 (Tex. Crim. App. 1989); Biggs, 921 S.W.2d at 285. The notice
requirement of Article 38.072 is to prevent a defendant from being surprised at trial about a victim's
outcry statements. In determining if a failure to comply with Article 38.072, § 2(b)'s notice
requirement is harmless error, appellate courts have looked at whether the defendant was actually
surprised by the outcry evidence presented by the state and whether the defendant was prejudiced
by a lack of notice. Gabriel v. State, 973 S.W.2d 715, 719 (Tex. App.-Waco 1998, no pet.). 
 The nature of the error was the improper admission of hearsay evidence over objection, and
Davidson had the opportunity to cross-examine the declarant. 

 While a jury is generally likely to place more weight on the testimony of the victim than on
the testimony of the outcry witness, when there are no other corroborating witnesses and the outcry
witness is the mother of the victim and the outcry statement is detailed, it is difficult to say that the
jury would not place great weight on the outcry witness's testimony. Additionally, the State did not
emphasize the hearsay testimony in closing arguments, mentioning it only to say: "She told her
mother. She told the authorities, and now she has told you." However, the State did emphasize the
outcry testimony by introducing it to the jury first, placing it in a position to influence the jury from
the beginning of the trial. Further, the pieces of testimony that the court erred in admitting into
evidence were not statements made by the declarant regarding the circumstances around the indicted
offense, but were statements describing acts of indecency with a child other than those alleged in the
indictment. Finally, there is no evidence in the record that Davidson had actual notice of the content
of the outcry witness's testimony, as there was in both Norris and Biggs. In Biggs, the prosecution
told the trial court that the state's files contained the outcry witness's statement to the police. Biggs,
921 S.W.2d at 285. 

 The court in Biggs also considered the defendant's failure to claim surprise or ask for a
continuance. Id. Davidson never explicitly claimed to be surprised and did not ask for a
continuance, but he did object that the testimony was not in the summary.

 Davidson objected to only part of the outcry testimony. After the objection was overruled,
Walraven went into detail about the outcry statement made by A.W., adding that Davidson had made
her look at "dirty" magazines, that A.W. had seen "gooey stuff" come out of Davidson's penis "a
bunch of times," that this happened "all the time," and repeating that Davidson had had oral sex with
A.W. Davidson did not renew his objection, and he had not requested a running objection; therefore,
Davidson did not preserve error as to this further testimony. See Ethington v. State, 819 S.W.2d 854,
858 (Tex. Crim. App. 1991); Hitt v. State, 53 S.W.3d 697 (Tex. App.-Austin 2001, pet. ref'd). 
A.W.'s testimony corroborated Walraven's testimony, except for the mention of oral sex, which
Davidson waived when he failed to object to it the second time it was mentioned. Based on a review
of these factors, we cannot say that the court's error in admitting the outcry witness's objected-to
testimony, which was beyond the scope of the summary, had a substantial and injurious effect or
influence on the jury's verdict. Therefore, the error was harmless. This point of error is overruled. 

 Finally, Davidson contends that based on the time, content, and circumstances of the
purported outcry, there were no indicia of reliability, and the trial court erred in admitting the
testimony. The State suggests that Davidson's objections were not sufficient to preserve this issue
for appeal. While Davidson did not make a general hearsay objection or use the term reliable, his
objections that the testimony was not spontaneous, was coerced by the mother, and was outside the
scope of the summary were sufficient to put the court on notice that he was objecting, in part, to the
unreliability of the outcry statement. 

 Davidson did not challenge the reliability of the outcry statement during the hearing held
outside the presence of the jury. At the time of Davidson's objection to the reliability of the
statement, Walraven had testified to the circumstances surrounding the outcry statement. The State
had laid the predicate of reliability, and the burden was on Davidson to demonstrate that the
statement was unreliable. By not requesting that the court hold a hearing outside the presence of the
jury to determine the issue of reliability, Davidson waived that requirement. By overruling
Davidson's objection regarding reliability, the court demonstrated its finding that it found the
statement was reliable considering the circumstances in which it was made. The court's decision that
the statement was reliable is reviewed for abuse of discretion. Reed, 974 S.W.2d at 841.

 The determination of whether the outcry testimony is reliable must be made on a case-by-case
basis. 

 Indicia of reliability that the trial court may consider include (1) whether the
child victim testifies at trial and admits making the out-of-court statement, (2)
whether the child understands the need to tell the truth and has the ability to observe,
recollect, and narrate, (3) whether other evidence corroborates the statement, (4)
whether the child made the statement spontaneously in his own terminology or
whether evidence exists of prior prompting or manipulation by adults, (5) whether
the child's statement is clear and unambiguous and rises to the needed level of
certainty, (6) whether the statement is consistent with other evidence, (7) whether the
statement describes an event that a child of the victim's age could not be expected to
fabricate, (8) whether the child behaves abnormally after the contact, (9) whether the
child has a motive to fabricate the statement, (10) whether the child expects
punishment because of reporting the conduct, and (11) whether the accused had the
opportunity to commit the offense. 


Norris, 788 S.W.2d at 71, citing Buckley v. State, 758 S.W.2d 343-44 (Tex. App.-Texarkana 1988,
no pet.), aff'd, 786 S.W.2d 357 (Tex. Crim. App. 1990).

 Walraven's testimony indicated that the outcry statement was not made spontaneously and
that Walraven prompted and encouraged A.W. to tell Walraven what secret she was keeping with
Davidson. However, it did not show that Walraven prompted A.W. as to the substance of the outcry
statement. There was no evidence that A.W. had any motivation to accuse Davidson of a crime. 
Additionally, Walraven's use of the phrase "oral sex" may have been Walraven's wording
summarizing what her daughter had described. There is no evidence that the outcry statement was
not made in A.W.'s own terminology without manipulation or prompting by Walraven as to its
substance. The circumstances suggested that A.W. was afraid to tell her mother what had happened,
perhaps fearing punishment. Finally, Walraven's earlier testimony regarding Davidson's role as
babysitter had established that Davidson would have had the opportunity to commit the offenses
involved in the outcry testimony.


 Thus, given the information that was before the court at the time the court made the ruling,
the record does not show that the court abused its discretion in finding that there were sufficient
indica of reliability regarding the time, content, and circumstances of the statement for the statement
to be admissible. This point of error is overruled. 

 The judgment of the trial court is affirmed. 




 Ben Z. Grant

 Justice


Date Submitted: March 12, 2002

Date Decided: June 4, 2002


Publish