Affirmed and Memorandum Opinion filed June 29, 2010

 

In The

 

Fourteenth Court of
Appeals

                                                                                          



NO. 14-08-00985-CR

NO. 14-08-00986-CR



 

Christopher Lee Davis, Appellant

V.

The State of Texas, Appellee

 



On Appeal from the 232nd
District Court

Harris County, Texas

Trial Court Cause No. 1154634
& 1154635



 

MEMORANDUM  OPINION

A jury
convicted appellant, Christopher Lee Davis, on two counts of aggravated sexual
assault.  In a single issue, appellant contends the trial court abused its
discretion by overruling his objections to certain outcry testimony.  Because
all dispositive issues are settled in law, we issue this memorandum opinion and
affirm.  See Tex. R. App. P. 47.4.

I.   Background

During
the period of time relevant to this case, the complainant, J.T., was a twelve
or thirteen-year-old female who lived with her mother, siblings, and appellant,
who was her mother’s fiancé.[1] 
On February 20, 2008, J.T.’s teacher, Dianna Farrar, noticed J.T. writing a
note during a time designated for reading.  Farrar confiscated the note, which
contained descriptions of sexual activity between J.T. and “Chris.”  After
reading the note, Farrar met with J.T. in the hallway and inquired about the substance
of the note.  J.T. began crying and shaking and did not want to discuss the
contents of the note.  She eventually stated that “Chris” was her mother’s
thirty-year-old boyfriend.  She admitted that the statements made in the note
were true and that she was “having sex” with appellant.  J.T. stated that she
and appellant had been “having sex . . . for sometime.”

Farrar
contacted Child Protective Services and the sheriff’s office.  Deputy John
Black arrived and met with Farrar, who gave him a “basic summary of what had
happened.”  Deputy Black interviewed J.T. with Farrar present.  J.T. told
Deputy Black about a sexual relationship between her and appellant.  She
explained that the relationship began after appellant saw her naked in the
shower and told her “I can’t get the way you looked naked out of my mind . . .
.”  When asked what type of sexual activity she had engaged in with appellant,
J.T responded “penis to vagina sexual intercourse.”  J.T. expressed that she
and appellant had engaged in sexual intercourse one or two times a week for the
last year.  

Later that
evening, officers interviewed appellant at the family home.  Appellant gave
oral and written confessions, both of which were admitted at trial.  In his
oral confession, appellant stated that he and J.T. engaged in
genital-to-genital sexual intercourse two or three times per month over the
last year, he twice performed oral sex on J.T., J.T. once performed oral sex on
him, and he did not use a condom.  In his written confession, appellant
admitted he and J.T. engaged in genital-to-genital sexual intercourse, engaged
in sex one or two times per week, and had recently engaged in sexual
intercourse on February 18, 2008, but did not mention that J.T. had put her
mouth on his penis.

            The next day,
J.T. was interviewed by child-psychologist Claudia Mullin, Ph.D.  When asked if
she knew why she was at Dr. Mullin’s office, J.T. responded, “I’m here because
I had sex with a 30-year-old man,” whom she described as “my mother’s
husband.”  According to Dr. Mullin, J.T. relayed the following during their
interview: her sexual activity with appellant began in 2007 when she was
twelve-years-old; the first instance of sexual abuse occurred when appellant
saw her naked in the shower and later that evening began kissing her and
brought her to her mother’s bedroom where “he put his penis in her vagina”; she
“implicated” that she and appellant “had sex multiple times” that first night; they
engaged in sex in various rooms in their house; appellant never used a condom; the
sexual intercourse did not hurt; appellant “put his mouth on her breasts and on
her vagina,” and also asked her twice to suck his penis and “put his penis in
[her] mouth . . . .”; she and appellant “were having sex” two or three times a
week for the last year; and they “had sex” earlier that week on February 18,
2008.

            Appellant was
indicted for (1) intentionally or knowingly causing the penetration of the
female sexual organ of a person younger than fourteen years of age with his
sexual organ, and (2) intentionally or knowingly causing the mouth of a person
younger than fourteen years of age to contact his sexual organ.  Before trial,
appellant objected to admission of outcry testimony from Farrar, Deputy Black,
and Dr. Mullin.  Specifically, appellant argued (1) J.T. did not voluntarily
speak with Farrar, (2) J.T.’s outcry to Farrar was unreliable, and (3) the
outcry testimony of Deputy Black and Dr. Mullin was inadmissible hearsay. 
Appellant also objected to admission of his confessions.  The trial court
overruled the objections, and appellant pleaded “not guilty.”  A jury convicted
appellant on both counts of aggravated sexual assault and assessed punishment
at twenty-five years’ confinement for each count.

II.   Analysis

In his
sole appellate issue, appellant argues that the trial court erred in admitting
the outcry testimony in violation of article 38.072 of the Texas Code of
Criminal Procedure.  We review a trial court’s decision to admit an outcry
statement for abuse of discretion.  See Garcia v. State, 792 S.W.2d 88,
92 (Tex. Crim. App. 1990).  We will uphold the trial court’s ruling if it is
within the zone of reasonable disagreement.  Chapman v. State, 150
S.W.3d 809, 813 (Tex. App.—Houston [14th Dist.] 2004, pet. ref’d).

The
applicable version of article 38.072 establishes an exception to the hearsay
rule for a statement made by a child victim “to the first person, eighteen
years of age or older, other than the defendant,” in which the child describes certain
offenses, including sexual assault, committed against her when she was twelve
years of age or younger.  Act of May 27, 1985, 69th Leg., R.S., ch. 590, § 1,
1985 Tex. Gen. Laws 2222, 2223 (amended 1995) (current version at Tex. Code.
Crim. Proc. Ann. art. 38.072 (Vernon Supp. 2009)).[2]

Appellant
presents two arguments in support of his contention that the trial court abused
its discretion: (1) the trial court erred in admitting the outcry testimony of multiple
witnesses because article 38.072 excepts from the hearsay rule only testimony
of the first adult to whom the outcry is made; and (2) the trial court erred by
admitting outcry testimony pertaining to offenses committed against J.T. when
she was thirteen-years-old because the applicable version of article 38.072
applies only to offenses committed against a child twelve years of age or
younger.  The State contends appellant waived these arguments.

We first
consider whether appellant waived error relative to Farrar’s outcry testimony. 
Before trial, appellant made the following statement to the trial court: “I was
going to object hearsay and I don’t know if you want me to do that now or
later.”  The trial court expressed that it would consider the outcry testimony
and conducted a reliability hearing.  The State summarized the context and
content of its three outcry witnesses.  The trial court then asked appellant’s
counsel for his objections.  Appellant’s counsel responded, “Objection to Ms.
Farrar is that the outcry wasn’t reliable and based on the summary of the
prosecution, Ms. Farrar -- well, the child didn’t voluntarily give this
statement.”  The trial court responded, “I think that the circumstances with
Farrar are reliable and so I’m going to overrule your objection on that one.”  Appellant
then objected that the outcry testimony from Deputy Black and Dr. Mullin was
hearsay, arguing that they merely provided a more detailed account of the same
abuse described by Farrar.  

We
conclude appellant’s reliability objection to Farrar’s outcry testimony did not
preserve error regarding whether the testimony complied with the requirements
of article 38.072 pertinent to this appeal, namely, whether Farrar was the
first adult to whom the outcry was made and whether her testimony involved
offenses committed against J.T. when she was twelve years of age or younger.[3] 
See Tex. R. App. P. 33.1(a).  However, appellant’s hearsay objection was
sufficient to preserve error regarding whether the outcry testimony of Deputy
Black and Dr. Mullin complied with the pertinent requirements of article 38.072. 
See Zarco v. State, 210 S.W.3d 816, 828–29 (Tex. App.—Houston [14th Dist.]
2006, no pet.) (citing Long, 800 S.W.2d at 548) (“A general hearsay
objection . . . is enough to preserve all appellate claims under [article
38.072].”).  Accordingly, we overrule appellant’s sole issue relative to
Farrar’s testimony but will consider whether the trial court erred in admitting
the outcry testimony from Deputy Black and Dr. Mullin.

A.        Application
of Article 38.072

To be
admissible under article 38.072, outcry testimony must be elicited from the first
adult to whom the outcry is made.  See Chapman, 150 S.W.3d at 812.  Article
38.072 requires “that the outcry witness . . . be the first person, 18 years
old or older, to whom the child makes a statement that in some discernible
manner describes the alleged offense” and provides more than “a general
allusion that something in the area of child abuse was going on.”  Garcia,
792 S.W.2d at 91.  Furthermore, under the version of article 38.072 applicable
to this case, outcry testimony must pertain to an offense committed against a
victim twelve years of age or younger.  See Martinez v. State, 178
S.W.3d 806, 814 (Tex. Crim. App. 2005).

We begin
by considering whether the trial court erred in admitting outcry testimony from
Deputy Black and Dr. Mullin regarding allegations of genital-to-genital sexual
intercourse.  Appellant argues this testimony was inadmissible because it pertained
to the same offense that was the subject of Farrar’s testimony.  Farrar
testified J.T. told her that she had been “having sex” with appellant “for
sometime” and that “they did it in her mother’s bed with the door shut.”  J.T. also
told Farrar that the statements she made in her note were true.  In the note,
J.T. wrote in pertinent part, “I remember the first time we’ve done this thing
that we have going on.  The first time you saw my whole body just all so[a]king
wet and everything,” “Come to think of it, I lost my virginity to you,” and “I
can’t help but to think about . . . how good you make me feel when you are
inside me . . . .”  

Testimony
of a second outcry witness is admissible if it concerns a separate, discrete
instance of sexual abuse from the instance testified about by the first
outcry witness.  See Hernandez v. State, 973 S.W.2d 787, 789 (Tex.
App.—Austin 1998, pet. ref’d).  However, the outcry testimony of a second
witness is not admissible under article 38.072 when the witness merely provides
additional details regarding the same instance of sexual abuse.  Brown v.
State, 189 S.W.3d 382, 387 (Tex. App.—Texarkana 2006, pet. ref’d)
(“[B]efore more than one outcry witness may testify, it must be determined the
outcry concerned different events and was not simply a repetition of the same
event told to different individuals.”); Broderick v. State, 35
S.W.3d 67, 73 (Tex. App.—Texarkana 2000, pet. ref’d) (“[T]he proper outcry
witness is not to be determined by comparing the statements the child gave to
different individuals and then deciding which person received the most detailed
statement about the offense.”).   

We
conclude that Farrar’s testimony regarding genital-to-genital sexual
intercourse was duplicated by the outcry testimony of Deputy Black and Dr.
Mullin.  Accordingly, the trial court erred in admitting the outcry testimony
from  Deputy Black and Dr. Mullin regarding the first time appellant and J.T.
engaged in genital-to-genital sexual intercourse and that they had engaged in sex
one or more times per week during the last year.  Furthermore, the trial court
erred in admitting Dr. Mullin’s outcry testimony that J.T. implied she and
appellant had sex multiple times during the first night they engaged in sexual
intercourse and that they engaged in sexual intercourse on February 18, 2008.

We next
consider whether the trial court erred in admitting Dr. Mullin’s outcry
testimony regarding J.T.’s participation in oral sex.  According to Dr. Mullin,
J.T. stated that appellant asked her on two occasions to suck his penis and he “put
his penis in [her] mouth . . . .”  The trial court could have reasonably
believed this testimony referred to offenses separate and distinct from those
testified to by Farrar.  Nevertheless, the State did not establish that the
article 38.072 hearsay exception applied because there is no indication J.T.
was twelve years of age or younger at the time of these offenses.[4] 
Consequently, the trial court abused its discretion in admitting this testimony. 
See Martinez, 178 S.W.3d at 814.  For the same reason, the trial court
erred in admitting Dr. Mullin’s testimony that J.T. told her appellant had put
his mouth on her breasts and vagina.

In sum,
we conclude the trial court erroneously admitted outcry testimony from Deputy
Black and Dr. Mullin regarding genital-to-genital sexual intercourse.  The
trial court also erred in admitting Dr. Mullin’s testimony that J.T. stated she
performed oral sex on appellant and he performed oral sex on her.  Therefore, we
will next conduct a harm analysis.

B.        Harm
Analysis

We
determine the harm caused by erroneous admission of outcry statements under
rule 44.2(b) of the Texas Rules of Appellate Procedure.  Tex. R. App. P.
44.2(b).  Pursuant to Rule 44.2(b), we must disregard non-constitutional error
that does not affect a criminal defendant’s “substantial rights.”  Id. 
“[A]n appellate court may not reverse for non-constitutional error if the
court, after examining the record as a whole, has fair assurance that the error
did not have a substantial and injurious effect or influence in determining the
jury’s verdict.”  Casey v. State, 215 S.W.3d 870, 885 (Tex. Crim. App.
2007).  A conviction should not be overturned if the appellate court, after
examining the record as whole, has fair assurance that the error did not
influence the jury, or had but a slight effect.  Johnson v. State, 967
S.W.2d 410, 417 (Tex. Crim. App. 1998).  Stated differently, if the reviewing
court has “a grave doubt” that the result was free from the substantial
influence of the error, then it must treat the error as if it did.  Burnett v. State, 88 S.W.3d 633,
637–38 (Tex. Crim. App. 2002) (citation omitted).  “Grave
doubt” means that “in the judge’s mind, the matter is so
evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error.”  Id. (citation omitted).

In
assessing the likelihood that a jury’s decision was adversely affected by the
error, we consider everything in the record, including any testimony or
physical evidence admitted, the nature of the evidence supporting the verdict,
the character of the alleged error and how it might be considered in connection
with other evidence.  Motilla v. State, 78 S.W.3d 352, 355 (Tex. Crim.
App. 2002).  We may also consider statements made during voir dire, jury instructions,
the State’s theory, any defensive theories, closing argument, and whether the
State emphasized the error.  Id. at 355–56.

Appellant argues the erroneously-admitted outcry
testimony substantially affected the jury’s consideration of the evidence.  First,
appellant refers to evidence that J.T.’s medical examination resulted in an
indeterminate finding on whether sexual abuse had occurred.  Additionally, no
semen was detected on swabs taken from J.T.  However, Reena Isaac, M.D., a
pediatric physician who interviewed and examined J.T., testified that the absence
of physical signs of sexual abuse was not an indication that the abuse did not
occur and the absence of semen could be due to several factors, including
bathing, changing clothes, and the duration of time since sexual intercourse.  Accordingly,
we cannot conclude that the erroneously-admitted testimony substantially affected
the jury’s consideration of the results of J.T.’s medical examination.

Second, appellant argues that J.T. vacillated during
her testimony.  During direct examination, J.T. admitted that she and appellant
engaged in genital-to-genital sexual intercourse for a year and she performed
oral sex on appellant.  She also acknowledged that she previously told
appellant’s attorney the allegations were untrue.  On cross examination, J.T.
testified that she fabricated her allegations because appellant forbade her to
play sports and someone from the district attorney’s office pressured her to
change her story.  However, on re-direct examination, she denied that she “made
. . . up” the allegations.  Appellant testified that J.T. made the allegations
shortly after he forbade her to play sports.  During closing argument,
appellant’s counsel made several statements attacking J.T.’s credibility.  He suggested
it is unlikely that appellant engaged in sex with J.T. multiple times per week while
other children and teenagers were in the house.  He argued how unusual it is
for J.T. not to tell Farrar, Deputy Black, and Dr. Mullin that the sexual
activity was painful or uncomfortable.  He also emphasized Farrar’s testimony
that J.T. became more popular after the allegations surfaced because it is “a
big deal” to have sex with an older man.  Further, he referred to evidence that
J.T. had been abused by her father when she was a small child.

We acknowledge that, during voir dire, the prosecutor
emphasized the importance of outcry testimony when a victim recants.[5] 
Nevertheless, there was ample evidence undercutting appellant’s theory that J.T.
fabricated the allegations.  Psychologist Dr. Lawrence Thompson testified there
are several reasons children recant allegations of sexual abuse, children
regularly attempt to protect the offender, and it is very rare for a child to
lie about sexual abuse.[6] 
J.T. testified that she feels like “this is all [her] fault.”  Farrar testified
that J.T. was upset when they spoke in the hallway and stated, “What are you
going to do with this letter[?]  Please don’t tell my mom.”  Appellant
testified that J.T. was a “good kid” and was obedient.  He admitted that after
he prevented J.T. from participating in sports, their relationship was normal
and “[s]he didn’t have an attitude . . . .”  Appellant agreed it is a “pretty
big stretch” to believe J.T. would fabricate serious allegations of sexual
abuse against someone with whom she had a normal relationship.  Thus, we cannot
conclude the erroneously-admitted testimony substantially affected the jury’s
consideration of J.T.’s testimony.

Third, we consider appellant’s denial of sexual
activity with J.T. and his argument that his confession was involuntary.  Appellant
testified that he did not intelligently waive his rights, the police told him what
to say, and he was not in a “right frame of mind” when he confessed because of alcohol
and marijuana use.  He testified that he had been a special-education student while
in school and signed the confession because he was taught to respect law
enforcement.   He also testified, “The [officers] told me that with my two
felonies that I was going to jail anyway.  It was my word against the child’s
word and I might as well confess to it.”  Appellant’s trial counsel also argued
that the officers had ample time, prior to appellant’s confession, to instruct or
coach him regarding his answers to their questions.  Additionally, during
appellant’s oral confession, one of the officers stated he had spoken in depth with
J.T.  The officer told appellant he was in the same level of trouble whether he
had sex with J.T. two-thousand times or twice and appellant should confess so
they could inform the prosecutor regarding his cooperation.

The State presented evidence contradicting
appellant’s claim that his confession was coerced and involuntary.  Officers
who interviewed appellant testified that he did not appear intoxicated, they
did not intimidate him, and they did not instruct him regarding his responses
to their questions.  Additionally, although appellant claimed he was not in the
“right frame of mind” when he confessed, he also testified he was not drunk but
“could [somewhat] function.”

We recognize that the prosecutor referred to
erroneously-admitted outcry testimony during opening statements and closing
arguments.  In her opening statement, the prosecutor stated that J.T. never
told Farrar or Deputy Black about oral sex.  During closing argument, she emphasized
that the officers were unaware oral sex had occurred at the time appellant
confessed, noting that J.T. did not tell Farrar or Deputy Black she performed
oral sex on appellant but told Dr. Mullin the day after appellant confessed.  However,
the prosecutor’s focus during closing argument was not on the veracity of the outcry
testimony.  Instead, she argued the unlikeliness of the officers instructing
appellant to confess that J.T. had performed oral sex when they were not aware
such offense occurred.  Although the prosecutor bolstered this point by
referring to the erroneously-admitted outcry testimony, one of the interviewing
officers testified he was not aware oral sex had occurred until appellant’s
confession.  Additionally, regardless of her vacillation, J.T. testified she
performed oral sex on appellant.  Thus, we cannot conclude that the
erroneously-admitted outcry testimony substantially affected the jury’s
consideration of appellant’s confessions.

Finally,
we note other evidence weighing in favor of the verdict.  Farrar testified J.T.
told her she and appellant had been “having sex . . . for sometime.”  The note
J.T. wrote to appellant evinced their sexual relationship.  One of the
interviewing officers testified that J.T. gave him the impression she was
having an affair with appellant and did not want her mother to find out.  Additionally,
Dr. Isaac testified that J.T. admitted she and appellant engaged in genital-to-genital
sexual intercourse “a lot,” beginning “last year” and most recently on February
18, 2008.  This evidence carries additional weight because the jury was
instructed to find appellant guilty if they find beyond a reasonable doubt that
appellant placed his penis in J.T.’s vagina “on or about the 18th day of
February, 2008 . . . .”  It also renders harmless Dr. Mullin’s testimony that
J.T. admitted she engaged in sexual intercourse with appellant on February 18,
2008.  See Anderson v. State, 717 S.W.2d 622, 628 (Tex. Crim.
App. 1986) (“Inadmissible evidence can be rendered harmless if other evidence
at trial is admitted without objection and it proves the same fact that the
inadmissible evidence sought to prove.”).  Furthermore, J.T. told Dr. Isaac the
most recent encounter was “genital, genital penetration,” appellant never used
a condom, and appellant “never got rough with me.”  Appellant did not object to
Dr. Isaac’s testimony or admission of Dr. Isaac’s medical records and notes,
containing evidence consistent with her testimony.  This evidence lessened
injurious effects of the erroneously-admitted outcry testimony regarding genital-to-genital
sexual intercourse and the prosecutor’s argument that appellant and J.T. had
“been having sex . . . 2 or 3 times a week for over a year.”

We acknowledge
Dr. Isaac testified, and her records reflect, that J.T. stated appellant did
not touch her on the mouth and never made her touch him anywhere.  Therefore, it
is arguable that during her interview with Dr. Isaac, J.T. denied she performed
oral sex on appellant.  However, even considering this evidence in conjunction with
Dr. Mullin’s erroneously-admitted outcry testimony regarding oral sex and
appellant’s testimony denying the allegation, we have a fair assurance Dr.
Mullin’s testimony did not have a substantial and injurious effect or influence
on the jury’s verdict.  J.T.’s testimony and appellant’s confession that J.T. put
her mouth on appellant’s penis weigh heavily in support of this conclusion.  

In sum, we fully acknowledge that some of the most specific
details of the abuse were included in the erroneously-admitted outcry testimony
and presented at the beginning of the State’s case-in-chief.[7]
 However, appellant’s confession, the testimony of J.T., Farrar, Dr. Isaac, and
the interviewing officers, and J.T.’s note mitigated the harmful effects of the
erroneously-admitted outcry testimony.  Considering the entire record, we have
a fair assurance that the erroneously-admitted outcry testimony of Deputy Black
and Dr. Mullin did not have a substantial and injurious effect on the jury’s
verdict.  See Casey, 215 S.W.3d at 885.  Accordingly, we
overrule appellant’s sole issue and affirm the trial court’s judgment.

 

 

                                                                                    

                                                                        /s/        Charles
W. Seymore

                                                                                    Justice

 

 

 

Panel consists of Chief Justice Hedges
and Justices Seymore and Sullivan.

Do
Not Publish — Tex. R. App. P. 47.2(b).









[1] In the record, appellant is sometimes referred to as
J.T.’s stepfather or her mother’s boyfriend, fiancé, or husband.  It is
undisputed that each title refers to appellant. 

 





[2] In 2009, the Texas Legislature amended article 38.072
to except from the hearsay rule the outcry statements pertaining to certain
offenses “committed against a child younger than fourteen years of age or a
person with a disability.”  See Act of May 19, 2009, 81st Leg., ch. 284,
§ 1, 2009 Tex. Gen. Laws 744, 744; Act of May 27, 2009, 81st Leg., R.S., ch.
710, § 1, 2009 Tex. Gen. Laws 1780, 1781; see also Tex. Code. Crim.
Proc. Ann. art. 38.072.





In Long v. State,
the Court of Criminal Appeals held that a hearsay objection to outcry testimony
puts the burden on the State to prove the testimony is admissible under the
provisions of article 38.072 or another hearsay exception.  800 S.W.2d 545, 547–48
(Tex. Crim. App. 1990).  Appellant’s reliability objection did not place the burden
on the State to prove Farrar’s outcry testimony complied with each requirement
of article 38.072. Instead, the objection only burdened the State to prove that
“the statement is reliable based on the time, content, and circumstances of the
statement.”  Tex. Code. Crim. Proc. Ann. art. 38.072. Reliability of the outcry
statement is only one of the requirements of article 38.072.  For example, an
outcry statement may be reliable but nevertheless inadmissible under article
38.072 when the statement concerns abuse that occurred when the victim was
thirteen-years-old or the witness was not an adult or the first person to whom
the outcry was made.  Hence, his reliability objection did not preserve error
concerning the State’s fulfillment of each requirement of article 38.072.





[4] The record establishes J.T.’s date of birth as April
13, 1994; accordingly, when Farrar, Deputy Black, and Dr. Mullin spoke with
J.T. in mid-February 2008, J.T. was approximately thirteen years and ten months
old.





[5] Specifically, the prosecutor asked, “If a child came
to court and said [the allegation] didn’t happen would you want to hear
evidence about what happened when the child made their report or made their
allegation?”  The venire responded affirmatively.  The prosecutor also
explained that the jury can convict solely “on the testimony of the outcry
witness even if the [victim] doesn’t testify.”





[6] Dr. Thompson testified that children victims sometime
want to protect the offender because they believe they are in love, the
offender provides financial support, and they do not want to hurt the family. 
Farrar testified that J.T. was in love with appellant.  J.T. and appellant
testified that appellant provided financial support for the family. 
Additionally, J.T. testified that she and her mother have spoken with appellant
since she made the allegations, and appellant testified J.T.’s mother still
visits him and has feelings for him.





[7] Farrar testified first, followed by Deputy Black and
Dr. Mullin.  The position of
erroneously-admitted outcry testimony in the State’s case can be a factor for
consideration in analyzing harm.  See Davidson v. State, 80 S.W.3d
132, 138 (Tex. App.—Texarkana 2002, pet. ref’d) (recognizing that the State
emphasized “outcry testimony by introducing it to the jury first, placing it in
a position to influence the jury from the beginning of the trial.”).