

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-12-00529-CR

JAVIER SOLIS                                                          APPELLANT

V.

THE STATE OF TEXAS                                                          STATE

----------

## FROM THE 213TH DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

Appellant Javier Solis appeals his conviction for indecency with a child by contact. In two points, Solis argues that the trial court abused its discretion by allowing two witnesses to testify as to what Daughter, the complainant in this

---

[1]*See* Tex. R. App. P. 47.4.

case and Solis's biological child, told them about Solis's alleged inappropriate conduct toward her. We will affirm.

## II. BACKGROUND

After being urged by her niece to do so, Mother questioned Daughter about whether Solis had ever been inappropriate in a sexual manner toward her. Daughter began to cry and told Mother that Solis had "raped" and "molested" her. Daughter also said that Solis had touched her "private areas." According to Mother, Daughter generally did not want to discuss the topic outside of these comments, other than to confirm that Daughter would need to discuss the matter with law enforcement.

Eventually, a child forensic interviewer for the Alliance for Children Child Advocacy Center of Tarrant County interviewed Daughter. In the interview, Daughter revealed in detail how Solis had molested her over a period of years, between the ages of nine and thirteen. Daughter told Interviewer that Solis would come to her bedroom and retrieve her on nights when Mother worked. Solis would take her into his bedroom and perform varying indecent acts. By Daughter's account, sometimes Solis only put his hands under her nightshirt and sometimes touched her breasts. Daughter said that at other times, Solis would cause his penis to touch her vagina without penetrating her, but on other occasions Solis "actually put his private part in [Daughter]."

The State charged Solis with aggravated sexual assault of a child under the age of fourteen and with indecency with a child by contact.[2] Specifically to the assault charge, the indictment alleged that Solis had knowingly and intentionally "caused the sexual organ of [Daughter], a child younger than 14 years of age . . . to contact the sexual organ of [Solis]." As to the indecency charge, the indictment alleged that Solis had intentionally and knowingly "with the intent to arouse or gratify [his sexual desire] . . . engage[d] in sexual contact by touching the breast of [Daughter], a child younger than 17 years."

Prior to trial, the State notified Solis that it intended to introduce the "outcry" testimonies of both Mother and Interviewer. In its notice concerning Mother, the State informed Solis that, in summary, it intended to introduce evidence that Daughter had told Mother that Solis had "raped her since she was nine years old." The State attached Mother's handwritten statement to the notice, wherein Mother stated that when she inquired about the abuse, Daughter "began to cry and yell that her father had raped her since she was 9 years old." The written statement states that Daughter generally did not want to talk about the abuse but that Daughter ultimately agreed that she would have to "tell someone" like "the police."

---

[2]The State originally charged Solis with three counts of aggravated sexual assault and one count of indecency. For reasons not discernable from the record, the State waived two of the aggravated sexual assault charges.

3

In the State's notice pertaining to Interviewer, the State informed Solis that it intended to introduce Interviewer's testimony concerning what Daughter told her during the interview. The State wrote, "In summary, [Daughter] told [Interviewer] that on several occasions [Solis] touched [her] on her female sexual organ and breasts with his hand. In addition, [Solis] inserted both his finger and his male sexual organ into the female sexual organ of [Daughter]."

Prior to either Mother's or Interviewer's testimony at trial, the trial court conducted hearings to determine whether either witness fell within the statutory mandates of the outcry-witness exception to hearsay. *See* Tex. Code Crim. Proc. Ann. art. 38.072 (West Supp. 2013). At the hearing pertaining to Mother, she testified that after being prompted by her niece, she had asked Daughter about whether Solis had ever touched her inappropriately. Much like her written statement, Mother testified that through tears and emotion, Daughter alleged that Solis had "raped" her and "molested" her since she was nine. Daughter also said that Solis "touched her in her private areas when [Mother] would go to work." Mother testified that Daughter did not reveal to her any details. The trial court ruled that Mother's testimony fell within the outcry-witness exception to hearsay and that Mother would be allowed to testify. In the jury's presence, Mother testified that when Daughter revealed to her Solis's behavior, Daughter was very uncomfortable and upset and not forthcoming of any specific details. Mother averred that Daughter only revealed to Mother that Solis had "raped," "molested," and "touched" her.

Later during the trial, the trial court again held a hearing outside the jury's presence to determine whether Interviewer would be allowed to testify. Interviewer stated that Daughter revealed in detail how Solis would take Daughter from her bedroom at night when Mother was working. In the interview, Daughter described how Solis removed some of her clothing at times, how he would touch both her vagina and breasts, how he would cause his penis to push up against her "front part," and how, on more than one occasion, he tried to put his penis "in [her] private part." Daughter explained to Interviewer that as she would resist, Solis would pull her toward him, "hug[ging] her real tight." Solis would also pin her to his bed by getting "on top of her and hold[ing] her hands."

Citing hearsay and bolstering, Solis objected that Interviewer's testimony was a duplicate of Mother's testimony, with the "possible exception of touching the chest," and that she should not be allowed to testify. The State argued that Daughter's statements made to both Mother and Interviewer formed a "rolling outcry" whereby Daughter had simply revealed to Mother that she had been raped, but revealed to Interviewer in "a lot more detail, [and with] a lot more allegations as to what" happened. The trial court ruled that Interviewer could testify. In the presence of the jury, Interviewer testified to the same facts she testified to during the outcry-witness hearing.

Daughter testified at trial as well. Daughter averred that when she was nine, Solis began to retrieve her from a bedroom after Mother had gone to work. Daughter said that Solis would "carry" her to her parents' bedroom and lay her

5

down next to him on his bed. He would remove some of her clothing and begin to touch her "breast" and "vagina." Daughter said that she was scared to tell anyone what was occurring, even though it happened frequently, "like once or twice a month." According to Daughter, as she got older, the molestation progressed. By Daughter's account, Solis would routinely begin by touching either her vagina or her breasts, but the abuse progressed to where he would digitally penetrate her vagina, and eventually he persistently attempted to penetrate her vagina with his penis. Daughter testified that Solis did in fact eventually penetrate her "once" and that she pushed him away because it "hurt."

Solis also took the stand at trial and testified that he believed that Daughter made up these accusations because she did not like his current wife. He said that he loved Daughter and that she had visited him in the hospital and had been loving toward him.

The jury returned a verdict of guilty as to the indecency charge but a verdict of not guilty to the aggravated sexual assault charge. The jury assessed punishment at ten years' incarceration and a $3,600 fine. The trial court sentenced Solis accordingly and this appeal followed.

### III. DISCUSSION

#### A.    Mother's Testimony

In his first point, Solis argues that the trial court abused its discretion by allowing Mother to testify to what Daughter had told her when Mother inquired of Daughter whether Solis had been inappropriate to her. Specifically, Solis argues

6

that because Mother's niece was over the age of eighteen at the time the niece encouraged Mother to question Daughter, the niece was the proper outcry witness. Alternatively, Solis argues that the information that Mother testified to lacked the necessary specificity to satisfy the edicts of article 38.072 and that Interviewer is "the proper outcry witness in this case."

The State counters that there is no evidence in the record to support that Daughter revealed any information to the niece about Solis. The State further argues that Mother specifically testified to the elements of the indecency charge, that Interviewer testified specifically to the aggravated sexual assault charge, and that thus, the trial court did not abuse its discretion by allowing both outcry witnesses to testify. We conclude that the trial court abused its discretion by allowing Mother to testify because by Mother's testimony, Daughter did not reveal to her any specificity regarding either of the State's charges.

We review a trial court's decision to admit an outcry statement under an abuse of discretion standard. *Garcia v. State*, 792 S.W.2d 88, 92 (Tex. Crim. App. 1990); *see Martinez v. State*, 178 S.W.3d 806, 810 (Tex. Crim. App. 2005) (referring to article 38.072 as "a rule of admissibility of hearsay evidence" and describing its purpose). We will uphold the trial court's ruling if it is within the zone of reasonable disagreement. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000); *Chapman v. State*, 150 S.W.3d 809, 813 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd). But because the trial court has no discretion in determining the applicable law, the trial court abuses its discretion

7

when it fails to analyze the law correctly and apply it to the facts of the case. *State v. Kurtz*, 152 S.W.3d 72, 81 (Tex. Crim. App. 2004).

Hearsay is not admissible except as provided by statute or by the rules of evidence. *See Long v. State*, 800 S.W.2d 545, 547 (Tex. Crim. App. 1990). Article 38.072 establishes an exception to the hearsay rule, applicable in proceedings for prosecution of certain listed offenses, for statements made by a child or disabled victim "to the first person, 18 years of age or older, other than the defendant, to whom the [victim] . . . made a statement about the offense." Tex. Code Crim. Proc. Ann. art. 38.072 § 2(a)(3) (West Supp. 2013). To be admissible under article 38.072, outcry testimony must be elicited from the first adult to whom the outcry is made. *Lopez v. State*, 343 S.W.3d 137, 140 (Tex. Crim. App. 2011). Admissible outcry witness testimony is not person-specific, but event-specific. *Id.*; *West v. State*, 121 S.W.3d 95, 104 (Tex. App.—Fort Worth 2003, pet. ref'd). And article 38.072 requires more than "a general allusion that something in the area of child abuse was going on." *Garcia*, 792 S.W.2d at 91.

To be a proper outcry statement, the child's statement to the witness must describe the alleged offense, or an element of the offense, in some discernible manner and must be more than a general allusion to sexual abuse. *See id.* It has been written that in order to describe the alleged offense, the statement must contain the "how," "when," or "where" the offense allegedly transpired. *See Brown v. State*, 381 S.W.3d 565, 572 (Tex. App.—Eastland 2012, no pet.) (citing

8

*Sims v. State*, 12 S.W.3d 499, 500 (Tex. App.—Dallas 1999, pet ref'd)) ("On the other hand, the child's statements to Burkett regarding how, when, and where appellant touched her clearly satisfied the statutory requirements."); *see also Sledge v. State*, No. 03-03-00092-CR, 2004 WL 438958, at *1, 3 (Tex. App.— Austin Mar. 11, 2004, no pet.) (mem. op., not designated for publication) ("[T]estimony was relevant to the element of penetration required to be proved in a charge of aggravated sexual assault.").

In cases where a child has been victim to more than one instance of sexual assault, it is possible to have more than one proper outcry witness. *Broderick v. State*, 35 S.W.3d 67, 73 (Tex. App.—Texarkana 2000, pet. ref'd). But before more than one outcry witness may testify, it must be determined that each outcry concerned different events or offenses and was not simply a repetition of the same event told to different individuals. *Id.*

An illumination of the type of detail necessary to describe an offense in a discernable manner can be gleaned from *Brown*. 381 S.W.3d at 572. In *Brown*, the court held that a child's statements made to a 9-1-1 operator that "her mom made her put her hands up in her" and that "her dad put his middle part up in her" were no more than general allusions to sexual abuse. *Id.* at 572–73. The court also held in *Brown* that statements made by the same child to a police officer that her parents "touched her in her private areas" and that her "dad puts his male parts inside of her" were no more than general allusions to sexual abuse. The

9

court reasoned that these statements lacked the proper "how, when, and where" details necessary to describe a charged offense.[3] *Id.*

In this case, the State argues that Mother and Interviewer testified to different events. Specifically, the State argues that Mother's testimony went to the indecency charge, whereas Interviewer's testimony went to the aggravated sexual assault charge. But the record belies this position. Mother's testimony does not contain any specific details at all that could form the "how," "when," or "where" to a single element of either the indecency charge or the assault charge. Rather, it was the statements by Daughter to Interviewer that described the touching of Daughter's breast, a detail necessary to describe the indictment's indecency charge. Daughter's statement to Interviewer that Solis would cause his penis to touch her vagina without his penis penetrating her was also necessary to describe an element of the indictment's aggravated sexual assault charge. We hold that Daughter's statements to Mother that Solis had "raped" and "molested" her, as well as her statement that he touched her "private areas" fail to describe either the offense of indecency or aggravated sexual assault, as they are charged in the indictment, in any discernible manner, and the statements were no more than general allusions to sexual abuse. *See id.*

---

[3]The *Brown* court went on to hold that the forensic interviewer in that case was the proper outcry witness, but the court did not describe the testimony in its opinion, only revealing that the complainant in that case had described the events "in graphic detail" to the interviewer. *Brown*, 381 S.W.3d at 572.

Therefore, the trial court abused its discretion by allowing Mother to testify to what Daughter told her. We sustain Solis's first point.

## B. Interviewer's Testimony

In his second point, Solis argues that the trial court abused its discretion by allowing Interviewer to testify to what Daughter told her in the forensic interview. In short, Solis argues that "[Mother] was held to be the proper outcry witness and she testified first, therefore the testimony of [Interviewer] was permitted in violation of Article 38.072." As discussed above, and as Solis concedes in his first point, Interviewer, not Mother, was the proper outcry witness in this case because Interviewer's testimony described specific elements of each charged offense. *Sledge*, No. 03-03-00092-CR, 2004 WL 438958, at *1, 3. Thus, the trial court did not abuse its discretion by allowing Interviewer to testify. *See Brown*, 381 S.W.3d at 571–72 (holding that forensic interviewer who complainant described events in detail to was proper outcry witness and not investigating officer who complainant told that defendant had "touched her in her private areas"). We overrule Solis's second point.

## C. Harmless Error

Having held that Interviewer was the proper outcry witness but that the trial court erred by allowing Mother to testify, we must now determine whether the erroneous admission of Mother's hearsay testimony harmed Solis. *See Davidson v. State*, 80 S.W.3d 132, 138 (Tex. App.—Texarkana 2002, pet. ref'd) (conducting harm analysis after determining that trial court both erroneously

admitted outcry-witness testimony and also properly admitted outcry-witness testimony).

The erroneous admission of a hearsay statement constitutes non-constitutional error that is subject to a harm analysis. *See* Tex. R. App. P. 44.2(b); *see also Campos v. State*, 317 S.W.3d 768, 779 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) (citing *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998)).

Under rule 44.2(b), we disregard the error if it did not affect Solis's substantial rights. Tex. R. App. P. 44.2(b); *see Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070 (1999). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (*citing Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)). Conversely, an error does not affect a substantial right if we have "fair assurance that the error did not influence the jury, or had but a slight effect." *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001); *Johnson*, 967 S.W.2d at 417.

In making this determination, we review the record as a whole, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, and the character of the alleged error and how it might be considered in connection with other evidence in the case. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). We may also

consider the jury instructions, the State's theory and any defensive theories, whether the State emphasized the error, closing arguments, and even voir dire, if applicable. *Id.* at 355–56.

Here, Mother's hearsay testimony was that Daughter stated that Solis had "raped" and "molested" her and also that Solis had touched her "private areas." Daughter herself, however, gave detailed testimony concerning Solis's indecency and alleged sexual assault. She testified that Solis had continually carried her from her and her sibling's room when Mother was at work, removed portions of her clothing, and touched her "vagina" and "breast." Daughter testified that when she resisted, Solis would restrain her. She also described in detail how Solis had pressed his penis against her vagina, had attempted to penetrate her vagina with his penis, had on one occasion penetrated her, and that it hurt. This testimony was corroborated by Interviewer's properly admitted outcry testimony.

We conclude that in the context of the entire case against Solis, the trial court's error in admitting Mother's hearsay testimony did not have a substantial or injurious effect on the jury's verdict and did not affect Solis's substantial rights. *See Chapman*, 150 S.W.3d at 814–15 (holding improper admission of outcry testimony was harmless where similar testimony was admitted through complainant and pediatrician); *see also West*, 121 S.W.3d at 105 (holding that error in admitting outcry testimony did not influence jury's verdict or had but a slight effect because complainant provided detailed testimony relating to offense); *Davidson,* 80 S.W.3d at 138 (holding that erroneous admission of

13

outcry witness testimony was harmless error where complainant's testimony was otherwise corroborated by properly admitted outcry testimony). Thus, we disregard the error. *See* Tex. R. App. P. 44.2(b); *see also King*, 953 S.W.2d at 271.

## IV. CONCLUSION

Having sustained Solis's first point but found the trial court's error harmless, and having overruled his second point, we affirm the trial court's judgment.

/s/ Bill Meier

BILL MEIER
JUSTICE

PANEL: WALKER, MCCOY, and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: April 24, 2014